**FERRELLGAS, INC., a Delaware Corporation operating under the trade name Thermogas, Petitioner**

v.

**Ellen YEISER, Respondent.**

**No. 08SC997.**

Supreme Court of Colorado,
En Banc.

Feb. 28, 2011.

Rehearing Denied March 21, 2011.

Senter Goldfarb & Rice, L.L.C., Tiffaney A. Norton, Denver, Colorado, Attorney for Petitioner.

The Fowler Law Firm, LLC, Timms R. Fowler, Fort Collins, Colorado, Bendinelli Law Office, P.C., Marc F. Bendinelli, W. Joseph Lapham II, Denver, Colorado, Attorneys for Respondent.

Husch Blackwell Sanders LLP, Christopher L. Ottele, Christopher Brady, Denver, Colorado, Attorneys for Amicus Curiae Colorado Civil Justice League.

Justice RICE delivered the Opinion of the Court.

In this appeal, we review the court of appeals' decision regarding a complex series of post-verdict damages adjustments, all stemming from a breach of contract action by respondent Ellen Yeiser against petitioner Ferrellgas, Inc. We reverse the court of appeals' failure to set off the full amount of a settled subrogation claim by Yeiser's insurer, non-party Farmers Insurance Group ("Farmers"). We also hold that the trial court did not properly set off the amount of the settled claim when calculating pre-judgment interest, and remand for a recalculation of the proper amount of pre-judgment interest and a redetermination of whether Ferrellgas is entitled to costs in light of its pre-trial settlement offer to Yeiser.

## I. Facts and Procedural History

### A. Pre–Litigation Events

Yeiser contracted with Ferrellgas to deliver propane to her vacation house in Silverthorne, Colorado. Ferrellgas failed to timely deliver the propane and, as a result, the house's pipes froze and burst, causing substantial water damage to the house.

Yeiser carried a homeowner's insurance policy with Farmers, under which Farmers reimbursed Yeiser and her contractors for a total of $212,071.94 for the damage. Farmers then asserted a subrogation claim against Ferrellgas for the $212,071.94 amount. Ferrellgas settled the claim by paying Farmers $172,657.55—$39,414.39 less than Farmers paid to Yeiser and her contractors. Yeiser was not a party to the settlement.

## B. Pre–Trial Proceedings

Yeiser subsequently sued Ferrellgas for negligence, bad faith, and breach of contract. After Ferrellgas contested the negligence and bad faith claims, Yeiser withdrew them, and Ferrellgas admitted liability on the breach of contract claim. Ferrellgas, however, disputed Yeiser's claimed damages, and the case proceeded on that issue. Farmers was not joined as a party. Several months prior to trial, Ferrellgas made Yeiser a settlement offer of $197,000 inclusive of costs and interest, which Yeiser did not accept.

Yeiser filed a motion in limine seeking to preclude Ferrellgas from introducing evidence of Farmers's payment to Yeiser and her contractors, arguing that consideration or setoff of the payment was barred by the collateral source doctrine. The trial court denied the motion, holding that Ferrellgas effectively contributed to the payment by settling Farmers's subrogation claim, thus rendering the collateral source doctrine inapplicable. The trial court held that it would perform a post-verdict setoff[1] and ordered the parties not to introduce evidence of or otherwise mention Farmers's payment or the subrogation settlement to the jury.

Notwithstanding its order in limine, the trial court did not intervene as both parties repeatedly explained the details of Farmers's payment and the subrogation settlement and discussed how the jury should handle the setoff issues arising therefrom. To address the potential confusion, the parties agreed to a formal jury instruction that stated: "[Y]ou should not reduce the amount of damages by amounts either paid to or by Farmers...."

The jury then returned a general verdict of $314,323.21 for Yeiser, inclusive of the reasonable cost of repair damages to the home and her loss of use of the home and rental income during the reasonable time required to make the repairs.

## C. Post–Verdict Setoff Proceedings

Ferrellgas filed a post-verdict motion to set off the $212,071.94 that Farmers paid Yeiser and her contractors. In response, Yeiser argued that Ferrellgas was only entitled to set off the $172,657.55 that Ferrellgas paid Farmers to settle Farmers's subrogation claim. The trial court granted the motion, ordering setoff of the $212,071.94 amount.

Accordingly, the court entered judgment for Yeiser for $102,251.27—the $314,323.21 verdict amount minus the $212,071.94 amount. Because the amount of the judgment was less than Ferrellgas's rejected $197,000 settlement offer, the court awarded Ferrellgas $30,841.62 in costs. The trial court neglected to consider the issue of pre- or post-judgment interest, and Yeiser appealed that issue to the court of appeals. The court of appeals remanded the case back to the trial court to determine interest and amend the judgment.

Over Ferrellgas's objection, the trial court amended the judgment to include pre-judgment interest. The court added interest on the full verdict amount of $314,323.21 for the 366–day period between when Yeiser's house was damaged and when Ferrellgas paid Farmers pursuant to the subrogation settlement, for a running total of $339,543.46. Then, the court set off the $212,071.94 that Farmers paid Yeiser and her contractors, for a running total of $127,471.52. Next, the trial court added interest for the several years that had elapsed between Ferrellgas paying Farmers and the court's order of costs, reaching a running total of $176,654.47. Finally, the court deducted Ferrellgas's $30,841.62 cost award, for a final sum of $145,812.85. The court denied Ferrellgas any interest on its cost award and Yeiser any post-judgment interest.

## D. Appellate Proceedings

Yeiser then appealed to the court of appeals for a second time, arguing that the trial court's setoff of the $212,071.94 was barred under the common law collateral source rule, and that the trial court erred by granting Ferrellgas costs since it compared Ferrellgas's $197,000 settlement offer to the post-setoff verdict amount of $102,251.27 rather

---

1. The trial court's order did not make clear which amount it planned to set off—the $212,071.94 that Farmers paid Yeiser, or the $172,657.55 that Ferrellgas paid Farmers.

than the pre-setoff verdict amount of $314,323.21.

The court of appeals held:

1) That, under the common law collateral source rule, Ferrellgas was entitled to setoff of only the $172,657.55 amount that it paid Farmers and not of the $212,071.94 that Farmers paid Yeiser and her contractors;

2) That Ferrellgas was not entitled to costs since Ferrellgas's $197,000 settlement offer was less than the pre-setoff verdict amount of $314,323.21; and

3) That the trial court correctly calculated the pre-judgment interest, except for the offset of the $212,071.94 amount instead of the $172,657.55 amount.

Accordingly, the court of appeals ordered the trial court to reduce the setoff of the $212,071.94 amount to $172,657.55, recalculate pre-judgment interest, and reenter judgment. The court of appeals affirmed the judgment in all other respects.

Ferrellgas petitioned this Court for certiorari review, arguing that it was entitled to setoff of the entire $212,071.94 that Farmers paid Yeiser and her contractors and that the setoff should have been factored into the assessment of pre-judgment interest prior to the time that Ferrellgas settled Farmers's subrogation claim and the determination of whether Ferrellgas was entitled to costs in light of its settlement offer. We granted certiorari to review those issues.[2]

## II. Issues Presented

We begin under the assumption that the jury's verdict was an accurate finding of the cost to repair the damage to Yeiser's house and compensate her for the loss of use and rental income during the time reasonably required to make repairs. Although we acknowledge the troublesome nature of the

confusing presentation to the jury regarding the collateral source setoff process and the potential for such information to taint the jury's verdict, that issue is not before us and we therefore decline to consider it. *See Colo. Permanente Med. Group, P.C. v. Evans,* 926 P.2d 1218, 1229 (Colo.1996).

Proceeding from our initial assumption, we first consider how much of Farmers's insurance payments to Yeiser and her contractors, if any, should be set off in light of Colorado's collateral source doctrine and the law of subrogation. We then turn to the proper application of that setoff with respect to pre-judgment interest and costs under Colorado's settlement statute.

## III. Standard of Review

When faced with a mixed question of fact and law, we defer to the trial court's findings of fact as long as they are sufficiently supported by the record, but review its conclusions of law de novo. *People v. Vickery,* 229 P.3d 278, 281 (Colo.2010) (citation omitted). Here, we defer to the trial court's findings:

(1) That Ferrellgas's breach of its contract with Yeiser caused $314,323.21 in damages inclusive of the reasonable cost to repair Yeiser's house and her loss of use and rental income during time reasonably required to make repairs;

(2) That Farmers paid Yeiser and her contractors $212,071.94 under her homeowners insurance to reimburse her for the damage;

(3) That Farmers had some subrogation interest in its reimbursement to Yeiser and her contractors;

(4) That Ferrellgas paid Farmers $172,657.55 to settle that subrogation interest; and

2. Specifically, we granted certiorari to consider:

1) Whether the court of appeals erred when determining petitioner was not entitled to the full value of a resolved subrogation interest.

2) Whether the court of appeals erred when comparing petitioner's statutory offer of settlement to the jury verdict instead of the final judgment awarded to respondent and further err[ed] when determining petition-

er's offer of settlement had to somehow include potential subrogated interests and, thus, err[ed] when denying costs to petitioner.

3) Whether the court of appeals erred when determining interest should be awarded to respondent on the verdict for a period of time instead of awarding interest on the judgment.

(5) That Ferrellgas offered Yeiser $197,000 inclusive of costs and interests to settle her claim several months prior to trial.

Considering the resultant legal issues de novo, we conclude that the trial court properly set off the $212,071.94 that Farmers paid Yeiser and her contractors from Yeiser's damage award against Ferrellgas, and reverse the court of appeals' holding to the contrary. We further hold that the trial court erred by failing to set off the $212,071.94 prior to calculating pre-judgment interest, and remand for a proper determination of interest. Finally, we instruct the trial court on remand to reconsider whether Ferrellgas is entitled to costs in light of the reinstated $212,071.94 setoff amount and the recalculation of pre-judgment interest.

## IV. Analysis

### A. The Proper Setoff Amount from Yeiser's Damage Award

■ We first address the issue of what amount should properly be set off from Yeiser's damage award as a result of Farmers's payments to Yeiser and her contractors and Ferrellgas's settlement with Farmers. The trial court and the court of appeals held, and the parties argue here, that Farmers's payments to Yeiser and her contractors implicate Colorado's collateral source doctrine and its various exceptions and caveats. The lower courts and the parties advanced numerous arguments over how much, if any, of Farmers's payments could be set off under the collateral source doctrine.

We find these arguments unavailing, however, because they fail to fully account for the subrogation arrangement in this case. Considering that issue, we hold that the collateral source doctrine, even if applicable in the context of Yeiser's breach of contract claim, could not serve to bar the setoff of the full $212,071.94 amount that Farmers reimbursed Yeiser and her contractors for repairs to Yeiser's house. Farmers's subrogation interest in the $212,071.94 amount effectively allowed it to stand in Yeiser's shoes with respect to that amount, and Ferrellgas's $172,657.55 settlement of Farmers's subroga-tion interest was thereby an effective settlement with Yeiser of her interest in the $212,071.94 amount. Accordingly, the settlement extinguished Yeiser's right to seek the $212,071.94 amount from Ferrellgas. That amount therefore did not constitute a collateral source payment, and consequently, the collateral source doctrine could not operate to bar the setoff of that amount.

■ The relationship between Yeiser, Farmers, and Ferrellgas in this case is governed by the law of subrogation in the context of insurance. When an insurer reimburses a victim for damages pursuant to a claim under the victim's insurance policy, the insurer enjoys a right to subrogation, under which he can stand in the victim's shoes and collect the reimbursed amount from the party responsible for the damages. *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 323 (Colo.2009). The right can arise pursuant to an express provision in the insurance policy—a "conventional" subrogation right—or under principals of equity—an "equitable" subrogation right. *Id.* Regardless, once the subrogated insurer has resolved the claim, either through litigation or settlement, the insured is no longer entitled to recover the reimbursed portion of the loss from the responsible party. *See* 16 Lee R. Russ & Thomas F. Segalla, *Couch on Ins.* § 222:14 (3d ed.2010) (citation omitted).

Here, it is unclear what type of subrogation interest Farmers held in the payments of $212,071.94 to Yeiser and her contractors. It is similarly unclear whether Farmers followed the proper (or any) procedure to perfect its subrogation interest in the payments.

Yeiser concedes, however, that Farmers had *some* type of subrogation interest in the $212,071.94 amount, and that Farmers accepted Ferrellgas's payment of $172,657.55 in full satisfaction of that interest. Accordingly, once Ferrellgas settled Farmers's subrogation interest, Yeiser no longer had any claim to the $212,071.94 amount, regardless of the nature of Farmers's subrogation interest. Yeiser complains that she was not a party to the settlement and therefore should not be bound by it since Farmers settled the subrogation claim for less than its full value. Yeiser, however, is in no position to contest

the settlement; Farmers had the right as a subrogee to stand in Yeiser's shoes and resolve the claim without litigation by settling for less than the full value,[3] and its doing so had no effect on the inevitable extinguishing of Yeiser's interest in the $212,071.94.[4]

As a result, Ferrellgas's settlement of Farmers's subrogated interest in the $212,071.94 that it reimbursed Yeiser and her contractors for damages to Yeiser's house effectively constituted a partial settlement with Yeiser for that amount. The collateral source doctrine is inapplicable to bar the setoff of payments that are in some way "attributable" to the defendant. *Colo. Permanente*, 926 P.2d at 1232 (quoting *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1074 (Colo.1992)). In particular, neither rule is designed to bar the setoff of "[s]ums paid [by the defendant] to avoid liability at trial." *Smith v. Zufelt*, 880 P.2d 1178, 1184 (Colo. 1994) (citing with approval *Simon v. Coppola*, 876 P.2d 10, 20–21 (Colo.App.1993) (Briggs, J., specially concurring)). Because Ferrellgas effectively settled Yeiser's interest in the $212,071.94 amount to avoid liability for that amount at trial, that amount is fully attributable to Ferrellgas and thus cannot be set off under the collateral source doctrine.

Accordingly, we affirm the trial court's setoff of the $212,071.94 amount and reverse the court of appeals' holding to the contrary. Having settled the issue of the proper setoff from Yeiser's damage award, we turn to the proper consideration of the setoff with respect to Yeiser's pre-judgment interest award.

### B. Yeiser's Pre–Judgment Interest Award

Pre-judgment interest on damage awards not involving personal injury, such as property damage, is governed by section 5–12–102, C.R.S. (2010). *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 824–25 (Colo.2008). In particular, interest begins to accrue upon the date that money is "wrongfully withheld," or not paid, to the plaintiff to compensate him for his damages. *Id.* at 825.

Here, the trial court awarded Yeiser pre-judgment interest for the entire $314,323.21 verdict amount for the 366 days that passed between the initial damage to Yeiser's house and when Ferrellgas paid Farmers $176,654.47 to settle Farmers's subrogation claim, for a running total of $339,543.46. Only then did the court deduct the $212,071.94 amount that Farmers paid Yeiser, imposing interest on the running total of $127,471.52 for the time period stretching from the subrogation settlement to the court's entry of an order of costs, for a total judgment of $176,654.47 prior to entry of Ferrellgas's cost award. The court of appeals generally upheld the trial court's method of calculating the interest, but ordered the trial court to recalculate the interest on remand based on the reduced setoff of the $176,657.55 amount that Ferrellgas paid Farmers rather than the $212,071.94 amount that Farmers paid Yeiser and her contractors.

The line of reasoning invoked by the lower courts, however, again fails to account for the subrogation arrangement between the parties. As previously discussed, Ferrellgas's settlement of Farmers's subrogation claim effectively constituted a partial settlement of Yeiser's claim, extinguishing Yeiser's interest in collecting the $212,071.94 amount from Ferrellgas.[5] To the extent that Ferrellgas wrongfully withheld payment of the $212,071.94 amount for the 366 days between the damage to Yeiser's house and Ferrellgas's payment to Farmers, any obligation on the part of Ferrellgas to pay interest on the $212,071.94 amount was extinguished when

---

3. We acknowledge that section 10–1–135(3)(a), C.R.S. (2010) generally bars the settlement of subrogation claims before an injured party has been fully reimbursed by a tortfeasor. Even assuming that Yeiser's claim sounded in tort for the purposes of implicating the statute, however, section 10–1–135(3)(a)(II) exempts property damage, such as the water damage to Yeiser's house, from the bar on pre-reimbursement subrogation settlements.

4. It is likely that Yeiser, pursuant to her insurance policy, would have had to reimburse Farmers for the $212,071.94 amount out of her judgment against Ferrellgas even if Farmers had not settled its subrogation claim against Ferrellgas.

5. *See* discussion *supra* Part IV(A).

Ferrellgas settled Farmers's subrogation claim. It was Farmers's prerogative to resolve the issue of interest within the context of the subrogation settlement, and there is no evidence before us that that issue was not resolved. Nor could we disturb the results of the settlement in any event, because Farmers is not a party to this case. Accordingly, we hold that the trial court erred by not deducting the $212,071.94 amount prior to calculating pre-judgment interest.

■ We also note that in *Goodyear*, announced shortly after the court of appeals' decision in this case, this Court interpreted section 5–12–102, holding that the date upon which pre-judgment interest begins to accrue for failure to reimburse the victim of damage to property depends on the measure of damages. 193 P.3d at 827. In particular, this Court recognized two measures of damages with different accrual dates: diminution in value and cost of repair or replacement. *Id.* When damage is measured by diminution in value, interest begins to accrue as of the date that the plaintiff suffered injury to his property, because the plaintiff will be unable to earn a return on the amount of damages. *Id.* at 827–28. On the other hand, when damage is measured by cost of repair or replacement, interest does not begin to accrue until the plaintiff actually spends money on the repair or replacement, because the plaintiff is able to earn a return on the money until he spends it. *Id.* at 828.

In this case, Yeiser's damage award potentially implicates both of the *Goodyear* damage measures. The jury was instructed to calculate damages for the reasonable cost of repair *and* for diminution in value through the loss of use and rental income. The jury, however, returned only a general verdict that did not reflect the apportionment of damages between the reasonable cost of repair and diminution in value.

Because we lack any basis to distinguish between the amount of damages awarded for reasonable cost of repair and diminution in value, we affirm in general the trial court's method of calculating interest dating from the time that Yeiser's house was initially damaged. We nonetheless reverse the trial court's decision not to deduct the $212,071.94

amount for the entire period over which it calculated pre-judgment interest, and instruct it on remand to recalculate the appropriate amount of pre-judgment interest owed by Ferrellgas *after* deducting the $212,071.94 amount from the $314,323.21 verdict for the entire period of accrual. After calculating the appropriate amount of pre-judgment interest, the trial court can then re-evaluate whether Ferrellgas is entitled to costs—the issue to which we now turn.

## C. Ferrellgas's Cost Award

■ Under Colorado's offer of settlement statute, section 13–17–202, C.R.S. (2010), a defendant who serves an offer of settlement on a plaintiff more than fourteen days prior to trial is entitled to actual costs incurred after the offer if the plaintiff rejects the offer and does not recover a "final judgment" in excess of the offer. § 13–17–202(1)(a)(II). Here, Ferrellgas timely offered to settle Yeiser's claims for $197,000 "inclusive of costs and interests"—an offer which Yeiser refused. After trial, Ferrellgas requested costs since Yeiser's $102,251.27 post-setoff judgment was less than the settlement offer; the trial court agreed and awarded Ferrellgas $30,841.62.

The court of appeals reversed the cost award, holding that the proper amount to consider with respect to the "final judgment" for purposes of the settlement statute was not the $102,251.27 post-setoff judgment, but rather the $314,323.21 pre-setoff verdict amount. Because the latter amount was more than Ferrellgas's $197,000 settlement offer, the court of appeals held that Ferrellgas was not entitled to recover costs under the settlement statute. The court of appeals primarily rested its holding on the principle articulated in *Rubio v. Farris*, 51 P.3d 992, 994 (Colo.App.2002), that "the [final] judgment and offer must be considered in a like manner" for the purposes of the settlement statute. In particular, the court of appeals focused on Ferrellgas's failure to explicitly articulate whether its $197,000 offer was inclusive of or in addition to the $172,657.55 that Ferrellgas had already paid Farmers, reasoning that because the settlement offer did not explicitly account for the setoff of

that payment, the "final judgment" should likewise not include the setoff.

We find the court of appeals' reasoning unpersuasive. It implies that Ferrellgas's $197,000 settlement offer was, in reality, an offer for $197,000, minus the $172,657.55 that Ferrellgas already paid Farmers and her contractors—a mere $24,342.45. But prior to making its settlement offer, Ferrellgas had already indicated its intention to seek post-verdict setoff of the entire amount that Farmers had paid Yeiser—$212,071.94. Under the court of appeals' reasoning, Ferrellgas's actual offer could have been $197,000 less $212,071.94—a *negative* net offer. To read such an unlikely possibility into an otherwise straightforward settlement offer, absent any supporting evidence, violates our principle of deference toward the encouragement of settlement. *See Zufelt,* 880 P.2d at 1185. Moreover, doing so would undermine the very foundation of Colorado's settlement framework, which relies on the conceptualization of settlement offers as ironclad, irrevocable promises to pay the offered settlement amount in exchange for the guarantee that the matter will be resolved and judgment will be entered. *See Centric–Jones Co. v. Hufnagel,* 848 P.2d 942, 947 (Colo.1993).

■■■ Furthermore, the court of appeals' reliance on *Rubio* is misplaced. *Rubio* stands for the narrow and sensible proposition that a settlement offer explicitly including costs ought to be compared to a "final judgment" adjusted to reflect the same costs for the purposes of the settlement statute. 51 P.3d at 994–95. Litigation costs are not an inherent part of the underlying factual dispute between parties, but rather arise as a result of the dispute actually proceeding to litigation. Because settlement is directed at precluding those costs, there is no reason to assume that a settlement offer would include the costs absent an explicit statement of inclusion. *Novak v. Craven,* 195 P.3d 1115, 1121 (Colo.App.2008) (establishing as a corollary to *Rubio* that a "final judgment" for the purposes of the settlement statute should *not* be adjusted to include costs if they are not explicitly included in the settlement offer).

On the other hand, if a settlement offeror strategically chooses to include costs in his offer, it is only fair for the trial court to include those costs when determining whether accepting the settlement would have proven a more cost-effective and efficient option than proceeding to trial.

■■■ The post-verdict setoff of a settled subrogation claim fundamentally differs from litigation costs with respect to the settlement statute, because such a setoff is part and parcel of the damages stemming from the claim disputed by the parties. A subrogation settlement setoff is inherently and impliedly a part of the jury's determination of damages, mechanically excluded by legal artifice from the jury's determination and imposed after the verdict only to ensure that the jury's factual determination is an accurate measure of damages untainted by confusion over the legal propriety of the setoff.[6] To exclude such a setoff from the "final judgment" for purposes of the settlement statute would effectively exclude part of the verdict itself. Accordingly, we hold that a settlement offer should be presumed to impliedly include the amount of any post-verdict subrogation setoff.

For the foregoing reasons, we reverse the court of appeals' holding that Ferrellgas's settlement offer should be compared to the pre-setoff verdict amount for the purposes of the settlement statute. On remand, the trial court should compare Ferrellgas's settlement offer of $197,000 to the $314,323.21 verdict amount *minus* the $212,071.94 amount that Farmers paid Yeiser and her contractors. Because Ferrellgas's settlement offer was inclusive of interest, the trial court should also add to the post-setoff verdict amount all prejudgment interest incurred prior to, but not after, the settlement offer. § 13–17–202(2); *Rubio,* 51 P.3d at 995.

## V. Conclusion

In sum, the trial court should set off the full $212,071.94 amount that Farmers paid Yeiser and her contractors. It should also recalculate pre-judgment interest based on

---

**6.** Although we acknowledge that the trial court failed to properly shield the jury from these setoff procedures in this case, that issue is not before us here.

the post-setoff amount for the entire period during which interest accrued. Finally, the trial court should reinstate Ferrellgas's $30,841.62 cost award if its settlement offer of $197,000 is greater than the $314,323.21 verdict amount, minus the $212,071.94 setoff amount, plus any pre-judgment interest incurred prior to the settlement offer. We reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.