**Jeff C. STRUNK, Plaintiff–Appellant,**

v.

**Eric S. GOLDBERG, Defendant–Appellee.**

**No. 10CA1139.**

Colorado Court of Appeals, Div. VII.

May 26, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2010.

Melat Pressman & Higbie LLP, Glenn S. Pressman, Colorado Springs, Colorado, for Plaintiff–Appellant.

Sutton & Gulley, P.A., Debra K. Sutton, Jacquelyn S. Booker, Ginger L. Giles, Littleton, Colorado, for Defendant–Appellee.

Opinion by Judge BERNARD.

Plaintiff, Jeff C. Strunk, appeals the trial court's order awarding costs under section 13–17–202, C.R.S.2010, to defendant, Eric S. Goldberg. We affirm.

## I. Background

Defendant caused a multiple-car accident in which plaintiff was injured. Plaintiff sued defendant, claiming that defendant was negligent and that defendant's negligence caused him damages. Plaintiff sought compensation for the physical injuries he suffered, his medical expenses, and his loss of income and earning potential.

Defendant admitted that he was liable for causing the accident, but he contested the amount of damages.

In his disclosure statement filed under C.R.C.P. 26(a)(1), plaintiff identified three sets of documents that are pertinent to our analysis: lien documents from Alliance Health Partners and Optima Rehabilitation; a lien document from HR Medical; and medical payment documents from GMAC Insurance (the insurer). Additional information established that the insurer had compensated plaintiff for some of his medical costs. However, evidence developed before trial established that neither Alliance Health Partners, Optima Rehabilitation, nor HR Medical had filed liens.

Before trial, defendant gave plaintiff an offer of settlement. It stated:

Defendant[ ] ... pursuant to C.R.S. § 13–17–202, hereby make[s] a formal offer of settlement to Plaintiff ... in the total amount of $145,000.00 (One Hundred Forty Five Thousand Dollars), including all subrogation interests and/or liens, if any, that may exist upon or against any settlement, award, or judgment in this case. Acceptance of this offer is intended to fully and finally resolve all claims asserted by Plaintiff ... against Defendant[ ] ... in this lawsuit, including any claims held by way of subrogation and/or liens, if any, that may exist upon or against any settlement or award in this case.

Plaintiff rejected this offer and the case was tried to a jury. The jury awarded plaintiff $98,000. The trial court added interest in the amount of $16,228.63, for a total judgment of $114,528.63.

Plaintiff requested court costs because he was the prevailing party. Defendant contended that, pursuant to section 13–17–202, he was entitled to costs accrued after plaintiff rejected his offer of settlement. Plaintiff replied that section 13–17–202 was not applicable because the offer of settlement had included a nonmonetary condition, and that he was entitled to costs accrued before and after the offer of settlement was rejected.

The trial court determined that the offer of settlement was a valid statutory offer of settlement for the purposes of section 13–17–202. It awarded (1) plaintiff $4,090.11 for his costs accrued before the offer of settlement was made; and (2) defendant $14,885.68 for costs accrued after the offer was rejected.

## II. Analysis

■ Plaintiff contends that the trial court erred. He argues that defendant's settlement offer was not within the scope of section 13–17–202 because it contained nonmonetary conditions. We disagree.

Appellate courts "review issues of statutory construction and application de novo." *Montes–Rodriguez v. People,* 241 P.3d 924, 927 (Colo.2010).

As relevant here, section 13–17–202(1)(a)(II), C.R.S.2010, states:

If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.

The purpose of section 13–17–202 is to encourage the settlement of litigation by encouraging reasonable settlement offers by all parties. *Centric–Jones Co. v. Hufnagel,* 848 P.2d 942, 946–47 (Colo.1993). The statute imposes a sanction on a party who rejects a reasonable offer of settlement and obtains a final judgment worth less than the amount offered. *Lawry v. Palm,* 192 P.3d 550, 565–66 (Colo.App.2008).

This statute "does not further define the type of settlement offer that comes within its scope." *URS Group, Inc. v. Tetra Tech FW, Inc.,* 181 P.3d 380, 392 (Colo.App.2008). However, divisions of this court have held that "imposition of nonmonetary conditions on acceptance of a settlement offer may remove the offer" from the statute's reach. *Id.* (condition that plaintiff release "future claims" was such a nonmonetary condition); *see also Tallitsch v. Child Support Services, Inc.,* 926 P.2d 143, 148–49 (Colo.App.1996) (condition that plaintiff use settlement funds to pay back child support was such a nonmonetary condition); *Martin v. Minnard,* 862 P.2d 1014, 1019 (Colo.App.1993) (conditions that plaintiff release claims in addition to those at issue, hold defendant harmless for any further claims against defendant made by anyone, and keep the settlement agreement confidential were such nonmonetary conditions). This is so because provisions included in an offer of settlement that "extend[ ] the scope of the offer beyond the claims at issue" are contrary to the purposes of section 13–17–202, because such provisions inject terms more generally associated with contracts into a statutory process. *Martin,* 862 P.2d at 1019.

Relying on *URS, Tallitsch,* and *Martin,* plaintiff contends that the offer of settlement here contained nonmonetary conditions that removed it from the scope of section 13–17–

202. According to plaintiff, the settlement offer established these nonmonetary conditions by stating that the offer was intended to apply to "all subrogation interests and/or liens, if any, that may exist upon or against any settlement, award, or judgment in this case," and that plaintiff would, by accepting the offer, "fully and finally resolve ... any claims held by way of subrogation and/or liens, if any, that may exist upon or against any settlement or award in this case." We disagree because, under the circumstances of this case, the references to "subrogation interests" and "liens" in the settlement offer did not implicate nonmonetary conditions.

### A. Subrogation Interests

■■■ A post-verdict setoff of a settled subrogation claim ... is part and parcel of the *damages* stemming from the claim disputed by the parties. A subrogation settlement setoff is inherently and impliedly a part of the jury's determination of damages, mechanically excluded by legal artifice from the jury's determination and imposed after the verdict only to ensure that the jury's factual determination is an accurate measure of damages untainted by confusion over the legal propriety of the setoff. To exclude such a setoff from the "final judgment" for purposes of [section 13-17-202] would effectively exclude part of the verdict itself. Accordingly, we hold that a settlement offer should be presumed to impliedly include the amount of any post-verdict subrogation setoff.

*Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1030(Colo.2011) (emphasis supplied) (footnote omitted).

■■■ We recognize that here, unlike in *Ferrellgas*, defendant had not settled with the insurer who paid some of plaintiff's medical bills. However, this difference is not significant enough to remove the situation in this case from the reasoning in *Ferrellgas*. This is so because, under the doctrine of subrogation, the insurer's subrogation interests will eventually allow it to stand in plaintiff's shoes with respect to that amount.

When an insurer reimburses a victim for damages pursuant to a claim under the victim's insurance policy, the insurer enjoys a right to subrogation, under which he can stand in the victim's shoes and collect the reimbursed amount from the party responsible for the damages. The right can arise pursuant to an express provision in the insurance policy—a "conventional" subrogation right—or under princip[les] of equity—an "equitable" subrogation right. Regardless, once the subrogated insurer has resolved the claim, either through litigation or settlement, the insured is no longer entitled to recover the reimbursed portion of the loss from the responsible party.

*Id.* at 1027 (citations omitted).

Applying the reasoning from *Ferrellgas*, we conclude that the reference to "subrogation interests" in the settlement offer did not involve a nonmonetary condition. Rather, (1) the injuries plaintiff suffered in the accident gave rise to the insurer's subrogation interests; (2) the portion of the settlement agreement referring to subrogation interests did not impose unknown risks on plaintiff, or refer to factors that were beyond those directly raised by plaintiff's claims; (3) the insurer paid some of plaintiff's medical bills; (4) the amount owed to the insurer could be determined with relative exactitude by referring to relevant documents; (5) under the doctrine of subrogation, the insurer would be entitled to recover that amount from defendant via settlement or litigation; (6) once that claim is resolved, plaintiff is no longer entitled to recover the reimbursed amount from defendant; and (7) this eventual setoff would be "part and parcel of the damages stemming from the claim disputed by" plaintiff and defendant. *Id.* at 1030.

### B. Liens

■■■ A lien is "a legal right or interest that a creditor has in another's property, lasting [usually] until a debt or duty that it secures is satisfied." *Black's Law Dictionary* 1006 (9th ed. 2009). Unlike a subrogated insurer, a lien holder generally does not have any rights against the tortfeasor, nor does a lien holder generally have the right to join in a plaintiff's lawsuit. *Trevino v. HHL Financial Services, Inc.*, 945 P.2d 1345, 1348–49 (Colo.1997). Instead, a lien results

from a debtor-creditor relationship between the plaintiff and the lien holder. *Id.* Thus, a lien holder possesses a claim against the injured party that may be satisfied by funds obtained from a settlement or judgment obtained by the injured party. *Id.*

■ There is an exception to the general rule that lien holders may not proceed against tortfeasors that is pertinent here. When the lien holder is a hospital, a tortfeasor may be liable to the lien holder for the amount of the lien. *See* §§ 38–27–101 to – 105, C.R.S.2010 (any person who pays money to an injured person may be liable to a hospital possessing a hospital lien). If a tortfeasor's insurer and an injured party resolve their claims without satisfying the lien, the lien holder may seek compensation from the insurer. *See Rose Medical Center v. State Farm Mutual Auto. Ins. Co.,* 903 P.2d 15, 17 (Colo.App.1994).

Here, the record establishes that, although plaintiff disclosed he had received lien documents from two medical providers, the providers have not filed any liens. Assuming, on the one hand, that such liens are never filed, the portion of the settlement offer referring to them did not impose any condition, let alone a nonmonetary one.

Assuming, on the other hand, that such liens are to be filed in the future, the settlement agreement's reference to them did not create a nonmonetary condition. As with the subrogation interests, (1) the injuries plaintiff suffered in the accident gave rise to these liens; (2) these liens, if they were to come into existence, would be related directly to the claims in plaintiff's lawsuit; (3) the portion of the settlement agreement referring to the liens did not impose unknown risks on plaintiff; (4) to the extent that the liens involved hospitals, the lien holders would be entitled to proceed against defendant to the extent that they were not included in any settlement; and (5) the amount of the liens could be predicted with relative accuracy at the time the settlement offer was made by referring to hospital billing records.

## C. Applicability of *URS, Tallitsch,* and *Martin*

By reaching these results, we further conclude that *URS, Tallitsch,* and *Martin* are distinguishable from this case. Unlike in *URS,* the insurer's subrogation interests and the putative liens here are not future claims, but are, instead, parts of the claim presently before the court. Unlike in *Tallitsch,* the subrogation interests and putative liens here are not included in the settlement offer to resolve an issue that is not connected to the claim before the court, but are, instead, a central part of that claim. And, unlike in *Martin,* the settlement offer would not bind plaintiff to a series of broad conditions beyond offering money to resolve the claim before the court, but, rather, it refers narrowly to existing, known, and calculable subrogation interests and putative lien amounts that are directly connected to resolving the claim.

Further, by recognizing these distinctions between *URS, Tallitsch, Martin,* and this case, we promote the purpose of section 13–17–202, which is to settle lawsuits by encouraging the parties to make reasonable settlement offers. *See Centric–Jones Co.,* 848 P.2d at 946–47. Excluding satisfaction of subrogation interests and unsatisfied liens, such as those at issue here, from the scope of section 13–17–202, would undercut this purpose.

On the one hand, defendants could make a settlement offer under section 13–17–202 with the clear understanding that they would be exposed to continuing responsibility for subrogation interests and liens that are directly connected to the plaintiffs' claims. This result would be a disincentive for some defendants to settle.

On the other hand, defendants could make contract-based offers, *see Martin,* 862 P.2d at 1019, that plaintiffs could reject without running the risk that they would have to pay costs under section 13–17–202. This result would be a disincentive for some plaintiffs to settle.

Plaintiff contended during oral argument that a statutory offer of settlement under section 13–17–202 can only be used to resolve claims between the parties presently before the court. Thus, his argument continues, such settlement offers cannot be used to

resolve independent claims of parties that are not before the court, such as nonparty insurers that are entitled to subrogation for funds paid to plaintiffs. We reject this argument for three reasons.

First, the language of section 13–17–202 does not include such a limitation.

Second, if statutory settlement offers are restricted in this manner, defendants would be encouraged to bring insurers and others with subrogation claims or liens as plaintiffs into lawsuits so that their ensuing offers of settlement will be covered by section 13–17–202. Adding unnecessary expense and complexity to cases in this manner would be inconsistent with the legislature's goal of encouraging litigants to settle lawsuits.

Third, many personal injury lawsuits involve subrogation and lien interests. Plaintiff's proposed construction would make it impractical to utilize the statutory settlement procedure in such lawsuits, thus effectively excluding them from section 13–17–202. However, there is no indication in the language of section 13–17–202 that the legislature desired such a result, or that settlement of personal injury lawsuits should be treated differently from settlement of other types of lawsuits.

### D. Conclusion

We conclude that the inclusion of the subrogation interests and the putative liens in the settlement offer did not create a nonmonetary condition. Rather, by including those factors, defendant explained the value of the settlement offer. Thus, the settlement offer was covered by section 13–17–202. Because the final judgment awarded to plaintiff did not exceed the amount of the settlement offer, the trial court properly awarded post-offer costs to defendant.

The order is affirmed.

Judge TERRY and Judge BOORAS concur.