COLORADO COURT OF APPEALS                                    **2017COA64**

Court of Appeals No. 15CA1030
Adams County District Court No. 10CV2032
Honorable C. Scott Crabtree, Judge

Taylor Morrison of Colorado, Inc., f/k/a Morrison Homes of Colorado, Inc.,

Plaintiff-Appellant and Cross-Appellee,

v.

Terracon Consultants, Inc.,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LICHTENSTEIN
Román and Freyre, JJ., concur

Announced May 18, 2017

Snell & Wilmer L.L.P., Michael E. Lindsay, Jessica E. Yates, Bethany Gorlin,
Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee

McDowell, Rice, Smith, & Buchanan, P.C., Thomas R. Buchanan, Jason L.
Buchanan, Linda C. McFee, Kansas City, Missouri, for Defendant-Appellee and
Cross-Appellant

¶ 1　　This case requires us to address for the first time how a trial court should adjust a jury verdict awarding damages for breach of contract when there is both a setoff for the amount recovered from other liable parties and a contractual limitation on a defendant's liability.[1]  We conclude the correct approach is to first apply the setoff against the jury verdict and then apply the contractual limitation against this reduced amount.

¶ 2　　We therefore reverse the judgment as to the final award, and remand with directions.  In all other respects the judgment and orders of the trial court are affirmed.

## I.　Background

¶ 3　　Plaintiff, Taylor Morrison of Colorado, Inc. (Taylor), appeals the judgment entered following a jury trial on a breach of contract theory against defendant Terracon Consultants, Inc. (Terracon).

¶ 4　　Taylor was the developer of a residential subdivision known as Homestead Hills.  In 2004, Taylor contracted with Terracon to provide geotechnical engineering and construction materials testing services for the development of the subdivision.  Through two

---

[1] We are using the term "setoff" in the broad sense to describe a reduction from an amount otherwise owed.

1

contracts, Taylor and Terracon agreed that Terracon was responsible for testing the soil for compliance with project specifications and building codes. Taylor and Terracon further agreed to a contractual limitation on liability (Limitation). The Limitation capped Terracon's total aggregate liability to Taylor at $550,000 for any and all damages or expenses arising out of its services or the contract.

¶ 5    By 2010, many of the homeowners notified Taylor about cracks in the drywall of their houses. Taylor investigated the complaints and then sued Terracon and other contractors for damages relating to those defects.

¶ 6    The court rejected Taylor's pretrial arguments that the $550,000 Limitation was either invalid or inapplicable to the action.[2] The court then granted Terracon's motion to dismiss it as a defendant after authorizing Terracon to deposit $550,000 into the court's registry, rendering Taylor's claims moot.

---

[2] Taylor raised three challenges to the $550,000 cap on liability: (1) the Homeowner's Protection Act of 2007 (HPA) invalidated the Limitation; (2) Terracon's willful and wanton conduct is excluded from the Limitation; and (3) any payments from Terracon's Commercial General Liability (CGL) policy are excluded from the Limitation.

¶ 7    Taylor proceeded to trial against the other contractors.  One of these other contractors was Bemas Construction, which performed site grading, including overlot and subexcavation work.  The jury returned a verdict in Bemas' favor.

¶ 8    Taylor ultimately recovered $592,500 through a settlement with the remaining contractors.

¶ 9    Taylor appealed the trial court's dismissal of Terracon as a defendant.  In *Taylor Morrison of Colo., Inc. v. Bemas Constr., Inc.*, 2014 COA 10 (*Taylor I*), a division of this court remanded the case to the trial court to determine if Taylor should have been permitted to introduce evidence of Terracon's willful and wanton conduct to overcome the contract's Limitation clause, and, if so, to order a new trial against Terracon.[3]

¶ 10    On remand, the trial court considered the issue and ordered a new trial on Taylor's breach of contract claim against Terracon. Although the court allowed evidence of willful and wanton conduct, it excluded opinion testimony from Taylor's experts that

[3] The division also held that the HPA could not constitutionally be applied to retroactively invalidate the Limitation clauses in the contracts between Taylor and Terracon, as such application would be impermissibly retrospective.  *Taylor Morrison of Colo., Inc. v. Bemas Constr., Inc.,* 2014 COA 10, ¶¶ 15-31.

characterized Terracon's conduct as "willful and wanton."  The jury awarded Taylor $9,586,056 in damages, but also found that Terracon's conduct was not willful and wanton.

¶ 11    After the court subsequently reviewed the parties' extensive post-trial briefing on damages, it entered a final judgment of zero dollars.  It arrived at this figure by first concluding that the $550,000 Limitation includes costs and prejudgment interest.  It then concluded that the Limitation must be applied to reduce the jury's $9,586,056 damages award to $550,000.  Finally, it deducted the $592,500 settlement (received from the other liable parties) to arrive at zero dollars.

¶ 12    The court found that neither party prevailed for the purposes of awarding statutory costs.  It also concluded that neither Terracon's deposit of the $550,000 into the court registry nor its e-mail to Taylor addressing a mutual dismissal constituted a statutory "offer of settlement" that would have allowed Terracon an award of actual costs and fees under section 13-17-202(1)(a)(II), C.R.S. 2016.

¶ 13    Taylor now appeals and Terracon cross-appeals.

## II.    Taylor's Appeal

### A.    Prior Challenges to the $550,000 Limitation

¶ 14    As an initial matter, Taylor reasserts arguments it made in the 2012 litigation that challenged the validity of the Limitation under the Homeowner's Protection Act of 2007 (HPA) as well as its applicability to any payments Terracon received from its Commercial General Liability (CGL) insurer.  For the reasons stated below, we decline to address them.

¶ 15    Taylor first requests that we revisit *Taylor I*, which held that the HPA could not be retroactively applied to invalidate the Limitation because such application would be unconstitutionally retrospective.[4]

¶ 16    True, a division of this court may review another division's ruling in the same case where "the previous decision is no longer sound because of changed conditions or law, or legal or factual error, or if the prior decision would result in manifest injustice."

---

[4] The HPA, enacted in 2007, states that, "[i]n order to preserve Colorado residential property owners' legal rights and remedies, in any civil action . . . , any express waiver of, or limitation on, the legal rights, remedies, or damages provided by the 'Construction Defect Action Reform Act' . . . [is] void as against public policy." § 13-20-806(7)(a), C.R.S. 2016 (footnotes omitted).

*Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 10 (quoting *Vashone-Caruso v. Suthers*, 29 P.3d 339, 342 (Colo. App. 2001)).

¶ 17    After considering Taylor's arguments, however, we conclude that none of these extraordinary circumstances exist here.  Indeed, the division in *Taylor I* considered, and ultimately rejected, the arguments that Taylor repeats in this appeal.  We are persuaded that the ruling in *Taylor I* correctly stated the law, thus we decline to revisit it.

¶ 18    Taylor next argues that the Limitation is not applicable to the extent damages are paid under Terracon's CGL policy.  Thus, Taylor contends that the trial court erred when it rejected Taylor's request to enter a judgment allowing it to pursue Terracon's CGL insurer.

¶ 19    But, as the trial court observed, it had already ruled on the CGL insurance issue in the 2012 litigation.[5]  Taylor did not then request the court to reconsider its ruling, and Taylor did not appeal

---

[5] The trial court reviewed the CGL policy and found there was no coverage for professional services, the type of services Terracon had provided to Taylor.  Therefore it rejected Taylor's request to pursue Terracon's CGL insurer.

it.  We agree with the trial court that Taylor had abandoned the issue.

¶ 20    In the 2012 litigation, Taylor raised the CGL insurance issue as one of two bases for objecting to Terracon's dismissal as a defendant upon its $550,000 deposit into the court registry.[6] Taylor appealed the court's dismissal of Terracon, but only pursued one of its two objections to the dismissal: that the $550,000 Limitation would not apply to Terracon's alleged willful and wanton conduct.  *See Taylor I*, ¶¶ 8, 35-38.

¶ 21    Taylor could have appealed the CGL insurance ruling in *Taylor I*, but did not do so.  Thus, Taylor abandoned it.  *See Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 245-46 (Colo. 2003) (finding appellant waived a damages cap issue in part because the appellant did not raise the issue in its previous appeal); *Fed. Lumber Co. v. Hanley*, 33 Colo. App. 18, 21, 515 P.2d 480, 482 (1973) (declining to consider an appellate challenge to the denial of a motion when an appeal had previously been taken from the same denial of that motion); *In re Marriage of Tognoni*, 313 P.3d 655, 658 (Colo. App.

---

[6] Taylor had argued that it would be premature to enforce the $550,000 cap because the Limitation only applied to the extent that the CGL policy did not provide coverage.

7

2011) (finding no error where court declined to revisit issue when husband had failed to appeal the previous order addressing the same issue); *see also Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995) ("We have several times said that appellate courts are precluded from revisiting . . . those prior rulings of the trial court that could have been but were not challenged on an earlier appeal.").

### B.  Contractual Limitation and Setoff

¶ 22    Taylor contends that the trial court erroneously deducted the $592,500 setoff from Terracon's contractual $550,000 limit on liability instead of deducting it from the $9,586,056 jury damages verdict.  We agree.

¶ 23    The proper measure of damages presents a question of law subject to de novo review.  *Colo. Ins. Guar. Ass'n v. Sunstate Equip. Co., LLC*, 2016 COA 64, ¶ 128; *see Ferrelgas, Inc. v. Yeiser*, 247 P.3d 1022, 1026-27 (Colo. 2011) (considering the propriety of a setoff under de novo standard of review).

¶ 24    No case in Colorado has addressed how a trial court should adjust a jury verdict awarding damages for breach of contract when

there is both a setoff for the amount recovered from other liable parties and a contractual limitation on a defendant's liability.

¶ 25     We conclude that a court must first apply the setoff against the jury verdict to ascertain the allowable amount of recovery, and then apply any contractual limitation against this reduced amount. This approach prevents double recovery by the plaintiff, preserves the parties' right to have the terms of a contract enforced, and best gives effect to the jury verdict.

¶ 26     We begin by acknowledging that a jury verdict must be given effect if possible. *See Tyler v. Dist. Court*, 200 Colo. 254, 256, 613 P.2d 899, 901 (1980). Nonetheless, a court must adjust a jury's damages verdict to ensure that a plaintiff's recovery does not exceed the amount of recovery permitted under the law.

¶ 27     As pertinent here, a plaintiff may not receive double recovery for the same losses arising from the same injury. *Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992); *Quist v. Specialties Supply Co., Inc.*, 12 P.3d 863, 866 (Colo. App. 2000). Thus, in order to prevent double recovery, a court must set off a loss by the amount of compensation a party already received

from another liable party for the same injury. *See Andrews v. Picard*, 199 P.3d 6, 11 (Colo. App. 2007).

¶ 28   Once the court determines the amount of a plaintiff's allowable recovery, then any bargained-for damages cap comes into play. *See Alhilo v. Kliem*, 2016 COA 142, ¶ 71 (holding, in a comparative negligence tort case, that the amount of proper recovery for a loss must be ascertained before addressing a statutory damages cap).

¶ 29   Applying the setoff before any contracted damages cap ensures that that the amount of damages does not exceed the recovery allowable under the law. It also ensures that the parties' bargained-for agreement will be enforced. *Core-Mark Midcontinent*, ¶ 13 (a limitation of liability clause is generally enforceable because it represents the parties' bargained-for agreement regarding the allocation of risks and costs in the event of a breach or other failure of the contemplated transaction).

¶ 30   But here, the trial court applied the $550,000 contractual limitation on damages before deducting the $592,500 setoff for the amounts received from other parties, resulting in a final judgment of zero dollars for Taylor. This result effectively rendered the jury's damages finding meaningless. *See Alhilo*, ¶ 73 (citing *Atkins v.*

*Strayhorn*, 273 Cal. Rptr. 231, 238 n.8 (Cal. Ct. App. 1990)). Neither the terms of the contract nor the prohibition on double recovery requires this result.

¶ 31    Had the trial court first applied the setoff against the jury verdict and then applied the contractual limitation, the court would have applied the $592,500 setoff against the $9,586,056 jury damages verdict, resulting in new total of $8,993,556. The trial court then would have capped Terracon's liability according to the Limitation, and reached a final judgment of $550,000 for Taylor.

¶ 32    This approach prevents double recovery because Taylor's recovery from Terracon and the other parties did not exceed the loss actually sustained (some nine and one half million dollars). This approach also preserves Terracon's rights to enforce the terms of the contract because Terracon would not have paid more than the Limitation agreed upon in the contract. And it is more consistent with the jury verdict because it avoids an even greater disparity between the actual loss and the recovery. *See id.* at ¶ 74 (The plaintiff "is already receiving an amount less than the jury determined he was damaged." (quoting *Atkins*, 273 Cal. Rptr. at 238)).

¶ 33    We are not persuaded by Terracon's argument that *Lira v. Davis*, 832 P.2d 240 (Colo. 1992), settled the issue of whether double recovery refers to the jury verdict or the final judgment, and therefore also settled whether to apply setoffs to jury verdicts or final judgments. *Lira* involved statutory interpretation of an amendment to section 13-21-102(1)(a), C.R.S. 2016, which was part of the tort reform legislation capping exemplary damages at one-to-one with compensatory damages. *Id.* at 245. There, the supreme court compared the statutory phrases "damages assessed" and "actual damages awarded" and concluded that by using these distinct phrases, the legislature intended that different meanings attach to them. *Id.* It held, for purposes of that statute, that "damages assessed" is synonymous with the amount of compensatory damages determined by the jury and "damages awarded" with the reduced amount of compensatory damages. *Id.*

¶ 34    *Lira*'s holding is inapposite because it was limited to the language of the exemplary damages statute in the context of tort reform legislation. Further, *Lira* never analyzed or even mentioned the prohibition on double recovery. Thus, it would be inappropriate to extend *Lira*'s holding on statutory exemplary damages in tort

12

cases to this breach of contract case. This is especially true when the practical effect would result in damages judgments that insufficiently compensate plaintiffs for losses sustained while relieving defendants of their bargained-for liability.

¶ 35 For these reasons, we reverse the judgment as to damages and remand with instructions to apply the setoff to the jury damages verdict before applying the contractual limitation and enter a final judgment of $550,000 for Taylor.

## C.   Costs and Interest

¶ 36 Taylor next contends that the trial court erred when it concluded that the $550,000 Limitation, by its terms, includes statutory costs and prejudgment interest. We perceive no error.

### 1.   Preservation

¶ 37 The parties dispute whether Taylor sufficiently preserved this claim. However, we need not resolve this dispute because the trial court issued a thorough order addressing this claim, and we conclude no error occurred. *See People v. Vasseur*, 2016 COA 107, ¶ 12.

## 2.  Standard of Review

¶ 38  We review a trial court's interpretation of a contract de novo. *Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 786 (Colo. App. 2000).

¶ 39  The Limitation reads:

> Client and Consultant have evaluated the risks and rewards associated with this project, including Consultant's fee relative to the risks assumed, and agree to allocate certain of the risks so, to the fullest extent permitted by law, the total aggregate liability of Consultant (and its related corporations and employees) to Client and third parties granted reliance *is limited to the greater of [$550,000] or its fee, for any and all* injuries, *damages,* claims, losses, *or expenses (including attorney and expert fees) arising out of Consultant's services or this agreement,* regardless of cause(s) or the theory of liability, including negligence, indemnity, or other recovery.

(Emphasis added.)

## 3.  Costs

¶ 40  Taylor argues that because the Limitation is silent as to statutory costs, the parties intended to exclude them from the agreed-upon cap.  We are not persuaded.

¶ 41  The pertinent language in the contract states that the Limitation applies to "any and all" expenses "including attorney and expert fees."

14

¶ 42   Section 13-16-122, C.R.S. 2016, identifies statutory costs available in civil actions.  It specifically lists among the items includable as statutory costs "attorney fees" and "charges for expert witnesses."  § 13-16-122(1)(e), (h).  Because the Limitation identifies attorney fees and expert fees as examples of "any and all . . . expenses," we interpret it to include statutory costs.

¶ 43   Taylor nonetheless argues that the Limitation applies only to cap the remedial costs resulting from Terracon's defective services.  We disagree.  The Limitation caps expenses "arising out of Consultant's services *or this agreement.*"  (Emphasis added.)  Thus, the Limitation's language covers costs associated with interpreting and enforcing the contract — i.e. the costs of litigation, which are statutory costs.

¶ 44   We also are not persuaded by Taylor's argument that the phrase "certain of the risks" indicates that the Limitation did not cover statutory costs.  As explained above, by including "any and all . . . expenses," the parties bargained to include statutory costs as part of the "certain" risks that the Limitation covers.

¶ 45   And we disagree with Taylor's argument that *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781 (Colo. 1989), requires us to

15

strictly construe the Limitation against Terracon. *Simkin* did not address a limitation clause, but instead addressed an exculpatory clause that released the defendant for all liability from any claims based on negligence and breach of warranty. *Id.* at 783. Nor are we persuaded by Taylor's contention that including statutory costs in the Limitation would convert it into an unbargained-for exculpatory agreement. While the clause in this case limited Terracon's total liability, it did not act as a waiver of any claim that Taylor chose to bring. *See, e.g., U.S. Fire Ins. Co., v. Sonitrol Management Corp.*, 192 P.3d 543, 548 (Colo. App. 2008) (acknowledging limitation of liability clauses, liquidated damages clauses, and exculpatory clauses as distinct categories).

¶ 46    Finally, because Taylor cannot recover statutory costs over and above the $550,000 cap, we need not address its challenge to the court's finding that it was not a prevailing party for purposes of awarding such costs.

¶ 47    We affirm the trial court's order denying the award of costs to Taylor on the basis that the $550,000 Limitation included statutory costs.

4.     Prejudgment and Postjudgment Interest

¶ 48     Taylor also argues the trial court erred when it ruled that the Limitation does not include prejudgment interest within its cap on liability.  Again, we disagree.

¶ 49     Prejudgment interest is an element of damages; its primary purpose is to compensate the plaintiff.  *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 512 (Colo. 2007) (citing *Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119, 132-33 (Colo. 2005)).

¶ 50     The Limitation caps Terracon's liability for "any and all injuries, *damages*, claims, losses, or expenses."  (Emphasis added.)  Because prejudgment interest is a form of damages, and because the Limitation includes language that it applies to "damages," we conclude that the Limitation covers prejudgment interest.

¶ 51     Finally, Taylor asserts that postjudgment interest is not covered by the Limitation.  We agree.

¶ 52     Distinct from prejudgment interest, postjudgment interest is not an element of compensatory damages.  *See Allstate Ins. Co. v. Starke*, 797 P.2d 14, 21 (Colo. 1990) (recognizing there is a substantive difference between prejudgment interest — which is an

17

element of compensatory damages — and postjudgment interest — which is not).

¶ 53     Taylor raised, but the trial court did not rule on, the issue of postjudgment interest. However, our decision reverses the judgment of the trial court, and directs it to enter a final judgment of $550,000 for Taylor. Therefore, we direct the trial court on remand to determine the proper postjudgment interest payable on that amount. *See* C.A.R. 37; *In re Marriage of Gutfreund*, 148 P.3d 136, 142 (Colo. 2006); *see also Thompson v. United Sec. All., Inc.*, 2016 COA 128, ¶ 35 (citing § 5–12–106(1), C.R.S. 2016).

## D.     Expert Testimony

¶ 54     Taylor appeals the trial court's exclusion of expert testimony concerning willful and wanton conduct. Taylor argues this error requires a new trial. We disagree.

### 1.     Standard of Review

¶ 55     A trial court has broad latitude to determine the admissibility of evidence. *Davis v. People*, 2013 CO 57, ¶ 13. We review such decisions for an abuse of discretion. *Quintana v. City of Westminster*, 8 P.3d 527, 530 (Colo. App. 2007). A trial court

18

abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair. *Davis*, ¶ 13.

### 2. Analysis

¶ 56 Under CRE 704, witness testimony "[o]therwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, CRE 704 does not allow a witness to "tell the jury what result to reach." *People v. Gaffney*, 769 P.2d 1081, 1087 (Colo. 1989) (quoting Fed. R. Evid. 704 advisory committee's note). Nor does it allow a witness to testify about whether a particular legal standard has been met. *People v. Collins*, 730 P.2d 293, 306 (Colo. 1986).

¶ 57 Here, the trial court allowed Taylor's experts to present their opinions concerning the quality of Terracon's performance under the contract for engineering services. The experts' pretrial reports, however, opined that Terracon acted willfully and wantonly. Yet, during depositions, all of the experts admitted that "willful and wanton" is not an engineering concept. Despite previous experience as expert witnesses in engineering, none had ever offered an opinion about willful and wanton conduct before this case.

¶ 58    Based on these facts, the trial court issued a pretrial order excluding testimony from the experts that characterized Terracon's conduct as willful and wanton. The trial court permitted the experts "to identify the acts or omissions which they claim breached the contract or fell below the standard adopted in Terracon's contract" but did not to permit the experts to "characterize those acts or omissions as willful and wanton conduct. . . . [o]r fraudulently, or with wrongful intent." Again at trial, the court clearly stated: "I'm not going to preclude any party from eliciting what they claim are these, sort of, egregious acts." But the court stated that one of the experts "expressed his opinion that it's willful and wanton conduct. I think he can say anything short of that."

¶ 59    During the trial, Taylor's experts provided detailed testimony describing how Terracon's supervision of technicians, soil testing, and review of test results failed to meet the relevant standards of care. The experts' testimony included opinions that Terracon's performance "doesn't even come close to what should have been done in order to provide assurances," "was a complete disregard of their responsibility," and was "as bad as I've seen anywhere, by far in – in 40 years of practice."

¶ 60 These experts were allowed to discuss all relevant facts and opinions on Terracon's performance using characterizations within their expertise, even if they were not permitted to testify whether this conduct met the legal standard of "willful and wanton conduct." *See Collins*, 730 P.2d at 306. Thus, on this record, we conclude the trial court's decision was not manifestly arbitrary, unreasonable, or unfair. The trial court's decision appropriately prevented Taylor's experts from testifying about legal concepts outside their expertise and violating CRE 704 by testifying about whether a legal standard was met.

## III. Terracon's Cross-Appeal

¶ 61 Terracon raises three issues on cross-appeal. Based on our disposition of this case, we need not address Terracon's two issues raised conditionally in the event the case was remanded for a third trial. However, we do consider Terracon's third issue: whether the trial court should have awarded Terracon costs under Colorado's settlement statute. We affirm the trial court's order concluding that Terracon did not make an offer of settlement as contemplated by the statute, and therefore it was not entitled to costs.

21

¶ 62 Terracon claims that the trial court erred in refusing to award it costs under Colorado's settlement statute. § 13-17-202. As pertinent here, this statute provides:

> If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.

§ 13-17-202(1)(a)(II).

¶ 63 We review issues of statutory construction and application de novo. *Strunk v. Goldberg*, 258 P.3d 334, 336 (Colo. App. 2011).

¶ 64 Terracon claims that it made two settlement offers. We will examine each in turn.

¶ 65 First, Terracon's argues that its deposit of $550,000 into the court registry, pursuant to C.R.C.P. 67(a), constituted a settlement offer. The trial court rejected this argument, as do we. Terracon moved the court for dismissal on the basis that, as a matter of law, the maximum amount of its liability to Taylor was $550,000. But this was not an offer to Taylor, and Taylor did not have the option to reject it. Because the settlement statute requires both an offer and

rejection, Terracon's actions did not trigger the statute, and Terracon is not entitled to costs.

¶ 66    Terracon also argues that an e-mail on December 10, 2014, from Terracon's counsel to Taylor's counsel constituted a settlement offer.  The e-mail stated as follows:

> Our client would agree to a mutual dismissal with prejudice, with full releases, and each side to pay their own costs and fees, provided it is accepted promptly.
>
> Aside from any other exposure Taylor Morrison might have, we believe Terracon will be the prevailing party when a willful and wanton finding does not occur and Terracon's recoverable costs will be easily twice the amount Taylor Morrison was required to pay to Bemas.

¶ 67    The trial court ruled that Terracon's alleged offer of settlement in this e-mail did not comply with section 13-17-202 because it contained nonmonetary conditions — such as an agreement for "mutual dismissal" and "full releases" — which extended the offer beyond the claims at issue.[7]  Under the circumstances of this case, we agree.

¶ 68    The purpose of section 13-17-202 is to encourage the

---

[7] The court also concluded that the settlement offer's requirement of a "prompt" response did not comport with the statute.

settlement of litigation by encouraging reasonable settlement offers by all parties. *Strunk*, 258 P.3d at 336. However, provisions included in an offer of settlement that "extend[] the scope of the offer beyond the claims at issue" are contrary to the purposes of section 13-17-202. *Id.* (quoting *Martin v. Minnard*, 862 P.2d 1014, 1019 (Colo. App. 1993)).

¶ 69 If a settlement offer injects terms beyond the settlement of existing claims, it does not fall under the statute but constitutes a settlement agreement based upon contract principles. *Martin*, 862 P.2d at 1019. Such an offer will not allow the offering party to recover costs under the statute. *Id.*

¶ 70 Here, the only claim at issue was Taylor's breach of contract claim. The e-mail referenced "full releases" without limiting the releases to this claim. "Full releases" could include future claims arising from any other "exposure Taylor might have" from other litigants — a possibility which the e-mail obliquely referenced. *See URS Grp., Inc. v. Tetra Tech FW, Inc.*, 181 P.3d 380, 392 (Colo. App. 2008) ("[B]y requiring a release of all 'future claims' related to the project, TTFW imposed a nonmonetary condition that took its offer outside the scope of section 13-17-202.").

¶ 71　　Further, by referencing a "mutual dismissal," the full release also could apply to the dismissal of any possible counterclaims that Terracon had not yet brought, again injecting terms beyond the settlement of the breach of contract claim. *See Martin*, 862 P.2d at 1019; *see also Dillen v. HealthOne, L.L.C.,* 108 P.3d 297, 303 (Colo. App. 2004) (Dailey, J., specially concurring) (A party's offer of settlement under section 13-17-102 should include enough information "so that the other party is properly alerted to the consequences of rejecting the offer.").

¶ 72　　Accordingly, we affirm the trial court's order denying the award of costs to Terracon.

## IV.　Conclusion

¶ 73　　The judgment of the trial court is reversed as to the final award and remanded with instructions to apply the setoff to the jury damages verdict before applying the contractual limitation, and to determine the proper postjudgment interest payable on that amount. In all other respects the judgment and orders of the trial court are affirmed.

　　　　JUDGE ROMÁN and JUDGE FREYRE concur.