Jacques A. MACHOL, Jr., a/k/a Jacques A. Machol; Jack Greenwald and Beverly A. Kaufman a/k/a Beverly Ann Kaufman individually and d/b/a B & J Investments; Sherrie Kaufman and Randal Kaufman, Plaintiffs–Appellees,

v.

Donna L. SANCETTA as personal representative of the estate of Marion Sancetta a/k/a Marion L. Sancetta; Richard J. Cordova a/k/a Richard Joseph Cordova; and New Alpine Inn, Inc., Defendants–Appellants.

No. 95CA0737.

Colorado Court of Appeals, Div. IV.

Aug. 8, 1996.

Law Offices of Richard K. Rufner, Englewood, for Plaintiffs–Appellees.

Hackethal, McNeill & Aucoin, P.C., George C. Aucoin, Lakewood, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

In this breach of contract action, defendant, Donna L. Sancetta, as personal representative of the estate of Marion Sancetta (Sancetta), appeals the judgment entered after a trial to the court in favor of plaintiffs, Jacques A. Machol, Jack Greenwald, and several other parties. The personal representative also appeals the award of damages. We affirm.

Plaintiffs owned commercial property in Denver. For over 12 years, the property had been leased to Richard Cordova, who operated a tavern and a cabaret on the premises. Around the time of the transactions at issue here, Cordova was experiencing financial difficulties and had fallen behind on the rent and also on payments of Colorado sales tax.

In March 1993, in an effort to help Cordova, Sancetta met with plaintiffs to inquire about purchasing the property. The intent was that Cordova would continue to run the business and that Sancetta would pay off the taxes and back rent. At that first meeting, the parties agreed to a purchase price for the property.

Immediately thereafter, Sancetta attempted to pay the back taxes at the Colorado Department of Revenue. However, because Sancetta did not yet have an ownership interest in the property, he was unable to do so. Thus, he assumed Cordova's lease on the property and subsequently paid the tax lien. On March 12, 1993, the parties executed a specific performance contract for the purchase of the property.

The contract contained a provision that "time is of the essence" and that plaintiffs were to provide a title commitment to Sancetta on or before March 19, 1993. The

closing date for the purchase of the property was March 29, 1993. However, at Sancetta's request, the closing date was continued.

In early May 1993, counsel for Sancetta contacted plaintiffs to indicate that he did not have a copy of the title commitment. Plaintiffs immediately faxed a copy to Sancetta's attorney. However, because Sancetta claimed that plaintiffs had breached the contract by not timely providing him with a copy of the title commitment, he did not appear at the rescheduled closing on May 12, 1993.

Plaintiffs subsequently filed a breach of contract action against Sancetta. They alleged that Sancetta had breached both the specific performance real estate contract and the lease he had assumed. In an effort to mitigate damages, plaintiffs later sold the property to a third party.

After a trial to the court in December 1994, judgment was entered on April 7, 1995, in favor of plaintiffs and against Sancetta. The court also awarded plaintiffs attorney fees and costs. This appeal followed.

## I.

First, the personal representative contends that the trial court erred in denying Sancetta's untimely demand for a jury trial. We disagree.

C.R.C.P. 38(b) provides that: "Any party may demand a trial by jury of any issue triable by a jury by filing and serving upon all other parties ... a demand therefor ... not later than ten days after the service of the last pleading directed to such issue." C.R.C.P. 39(b) further provides that: "Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court."

Here, the last pleading filed that was directed to an issue triable to a jury was plaintiffs' answer to Sancetta's counterclaim. That pleading was filed on September 8, 1993. Without providing any reason for the delay, Sancetta did not file his demand for a jury trial until January 26, 1994. Thus, the demand did not satisfy the requirements of C.R.C.P. 38.

The personal representative asserts that, although Sancetta did not file a timely de-

mand for a jury trial pursuant to C.R.C.P. 38, the trial court abused its discretion in denying the request for a jury trial because the demand was filed well in advance of trial.

■ We conclude, however, that under the terms of C.R.C.P. 39(b), the trial court had no discretion to grant an untimely request for a jury trial. As the parties note, C.R.C.P. 39(b) previously provided that "notwithstanding the failure of a party to demand a jury in which such demand might have been made, the court in its discretion may order a trial by a jury of any or all issues." *See McConnell v. District Court,* 680 P.2d 528 (Colo.1984) (trial court has broad discretion under this rule).

However, C.R.C.P. 39(b) was amended in 1990, and, in its current form, that rule provides that actions in which jury demands are not in accordance with C.R.C.P. 38 "shall be tried by the court." In light of such language, we conclude that C.R.C.P. 39(b) affords the court no discretion to grant an untimely request for a jury trial. *See People v. Taylor,* 876 P.2d 130 (Colo.App.1994) (the generally accepted meaning of the word "shall" indicates that the term is mandatory); *see also* 12 D. Knapp, *Colorado Civil Procedure Forms and Commentary* § 39.3 (1996) (although, prior to 1990, C.R.C.P. 39 gave a trial court wide discretion to grant a jury trial request, even if proper demand had not been made, that discretion has been completely eliminated by the amendment to the rule).

To the extent that the cases on which the personal representative relies hold that C.R.C.P. 39 affords the court discretion to grant untimely requests for a jury trial, those cases have been effectively overruled by the 1990 amendment to C.R.C.P. 39(b). Thus, we conclude that the trial court properly denied Sancetta's demand for a jury trial.

## II.

Next, the personal representative contends that the trial court erred in concluding that Sancetta breached the contract by, not attending the rescheduled closing on May 12, 1993. Specifically, she asserts that plaintiffs breached the contract by failing to provide Sancetta with the title commitment on or before March 19, 1993, as provided for in the contract, and the court erred in finding that the title commitment had been delivered to him by that date. We disagree.

■ The findings of the trier of fact must be accepted on review unless they are so clearly erroneous as not to find support in the record. *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380 (Colo.1994). And, when evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result. *Flagstaff Enterprises Construction, Inc. v. Snow,* 908 P.2d 1183 (Colo.App.1995).

■ Here, the record reveals that on March 15, 1993, plaintiffs sent a letter to the title company requesting that a copy of the title commitment be sent to Sancetta. Thereafter, Sancetta spoke with a representative from that company and provided her with his mailing address. And, despite several conversations with plaintiffs during March and April, Sancetta did not indicate until May 1993 that he had not received a copy of the title commitment. Indeed, Sancetta continued to seek funding for the purchase of the property after March 19, 1993, the date on which plaintiffs allegedly had breached the contract by not delivering the title commitment.

In our view, the record sufficiently supports the trial court's finding that Sancetta had received the title commitment on or before March 29, 1993. Because the personal representative offers nothing more than a conflicting interpretation of the evidence presented, we may not disturb the trial court's finding on appeal. *See Flagstaff Enterprises Construction, Inc. v. Snow, supra.*

## III.

Finally, the personal representative contends that the trial court erred in its calculation of damages. Specifically, she asserts that because Sancetta assumed the lease from Cordova only for the purpose of being able to pay the back taxes, it was error for

the court to award unpaid rent as part of the damage award. We disagree.

■ The amount of damages is within the sole province of the trier of fact, and an award will not be disturbed unless it is completely unsupported by the record. *South Park Aggregates, Inc. v. Northwestern National Insurance*, 847 P.2d 218 (Colo.App. 1992).

■ Here, it is undisputed that Sancetta assumed the lease on the property in March 1993 and that the lease was still in effect from May 1993 until June 1994. The trial court therefore awarded plaintiffs the amount of unpaid rent during that period. The court also awarded other related costs during that period, including real estate taxes, additional insurance, and sanitary sewer service. The basis for all of these costs was properly documented by the plaintiffs and, therefore, had adequate support in the record.

Thus, we conclude that the trial court properly assessed the damage award based upon the evidence in the record. *See Colorado National Bank v. Friedman*, 846 P.2d 159 (Colo.1993) (damage awards in contract cases should attempt to place parties in same financial position they would have been if contract had been fulfilled).

■ The personal representative also asserts that the trial court should deduct from the award the amount Sancetta paid for the back taxes on the property. However, because the trial court properly determined that Sancetta had breached the contract to purchase, we conclude that he was not entitled to recover that amount.

The judgment is affirmed. The cause is remanded for determination of additional attorney fees incurred on appeal, to be awarded to plaintiffs pursuant to the terms of the contract to purchase.

DAVIDSON and TURSI *, JJ., concur.