The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 23, 2019

## 2019COA81

### Nos. 18CA0049 & 18CA0760, *Scholle v. Delta Air Lines, Inc.* — Labor and Industry — Workers' Compensation; Damages — Collateral Source Rule

A division of the court of appeals considers a case in which the plaintiff was injured during the course of his employment and he sued the third-party tortfeasor. Before filing the action, the plaintiff had received workers' compensation benefits covering some of his medical expenses arising from the incident. By statute, a medical provider could not collect payment for medical expenses beyond those paid by the plaintiff's workers' compensation insurer. And, before trial, the defendant here had extinguished the insurer's subrogated interest in the amounts paid by paying off the insurer's claim for those damages.

The division holds that, even in light of those facts, the collateral source rule barred evidence of the medical expenses paid by the workers' compensation insurer, and the plaintiff could present evidence of the higher medical expenses actually billed by his medical providers. At most, the defendant, by virtue of its settlement with the insurer, may receive a post-trial setoff against any damages awarded to the plaintiff. To hold otherwise would allow the defendant to benefit from the fact that the plaintiff was covered by workers' compensation insurance, contrary to the collateral source rule.

Because the trial court erroneously admitted evidence of the medical expenses paid by the workers' compensation insurer and erroneously excluded evidence of any greater amount of past medical expenses, the division reverses the judgment in part and remands for a new trial on past medical expenses.

The separate opinion concludes that the collateral source rule does not apply under the facts here.

COLORADO COURT OF APPEALS 2019COA81

Court of Appeals Nos. 18CA0049 & 18CA0760
City and County of Denver District Court Nos. 14CV32213 & 14CV32268
Honorable Robert L. McGahey, Judge
Honorable Karen L. Brody, Judge

William Scholle,

Plaintiff-Appellee and Cross-Appellant,

v.

Delta Air Lines, Inc.,

Defendant-Appellant and Cross-Appellee.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE NAVARRO
Welling, J., concurs
Richman, J., concurs in part and dissents in part

Announced May 23, 2019

Bendinelli Law Firm, P.C., Marco F. Bendinelli, Blaine L. Milne, Westminster, Colorado, for Plaintiff-Appellee and Cross-Appellant

Treece Alfrey Musat P.C., Michael L. Hutchinson, Carol L. Thomson, Kathleen J. Johnson, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

¶ 1     When a plaintiff sues a defendant in tort for damages sustained due to the defendant's conduct, the collateral source rule generally forbids admitting evidence of payments for those damages made to the plaintiff by a collateral source such as an insurance company.  For instance, evidence of the amount of the plaintiff's medical expenses paid by an insurer is not admissible; instead, the plaintiff may submit, as a measure of damages, evidence of a higher amount of medical expenses billed by the medical provider.

¶ 2     But what if (1) the plaintiff was insured by workers' compensation insurance, and by statute a medical provider could not collect payment for medical expenses beyond those paid by the workers' compensation insurer; and (2) the defendant, before trial, extinguished the insurer's subrogated interest in the amounts paid by paying off the insurer's claim for those damages?  We hold that the collateral source rule applies all the same — evidence of the amounts paid by the insurer is not admissible at trial, but evidence of the amounts billed is admissible.  At most, the defendant, by virtue of its settlement of the insurer's subrogated claim, may receive a post-trial setoff against damages awarded to the plaintiff.

¶ 3     In this case, however, the damages awarded to plaintiff William Scholle were reduced during trial through evidence of the amounts his insurer paid to his medical providers *and* reduced post-trial via a setoff in the amount of defendant Delta Air Lines, Inc.'s settlement with the insurer. As a result, Scholle ultimately recovered nothing in economic damages. Because admitting evidence of the amounts paid by the insurer was error, we reverse the judgment in part and remand for a new trial, as limited by the following discussion.

## I.     Overview

¶ 4     This action arises from a luggage tug collision at Denver International Airport. In 2012, Scholle, a United Airlines employee, was driving a luggage tug in the course of his employment. Scholle was stopped when Daniel Moody, a Delta employee also driving a luggage tug, collided with Scholle. Scholle sustained injuries and missed work.

¶ 5     United, a self-insured employer under Colorado's workers' compensation system, paid for Scholle's medical expenses and some of his lost wages. To the extent of those payments, United

2

was subrogated to Scholle's rights to recover economic damages from Delta and Moody for causing Scholle's injuries.

¶ 6    In 2014, United sued Delta and Moody to recover the amounts United had paid to or on behalf of Scholle. Shortly thereafter, Scholle also sued Delta and Moody to recover for injuries related to the tug collision. The trial court consolidated the actions.

¶ 7    Delta eventually settled United's claim by paying United $328,799.16, and the court dismissed United's case with prejudice. Scholle's claims against Moody were later dismissed with prejudice as well, leaving only Scholle and Delta as parties. Delta admitted liability but disputed Scholle's claimed damages; so the case went to trial on damages.

¶ 8    In 2016, a jury returned a damages verdict for Scholle totaling approximately $1.5 million. The court, however, granted Delta's motion for a new trial due to misconduct by Scholle's attorney.

¶ 9    The case went to trial again in 2017, this time without a jury and before a new judge. The court considered evidence of the amounts paid by United for Scholle's medical treatment; the court excluded evidence of the higher amounts billed by medical providers. The court awarded Scholle $259,176, including

$194,426 in economic damages.[1]  The court later entered a setoff order reducing Scholle's economic damages award by the amount that Delta had already paid to settle United's claim, effectively reducing the amount owed to Scholle for economic damages to zero.

¶ 10    In case number 2018CA0049 (the merits appeal), each party challenges various rulings related to the damages judgment.  In case number 2018CA0760 (the costs appeal), Scholle contests a post-trial order denying him costs relating to two expert witnesses struck by the trial court, a ruling at issue in the merits appeal.  We consolidated the appeals.

¶ 11    Regarding the merits appeal, we reverse the damages judgment insofar as it relates to Scholle's past medical expenses because the trial court misapplied the collateral source rule. Because this evidentiary error affected only the medical expenses portion of the damages award, we affirm the judgment insofar as it pertains to (1) economic damages for lost wages and (2) noneconomic damages.

---

[1] Scholle's award consisted of $126,000 in past lost wages, $68,426 in past medical charges, and $64,750 in noneconomic losses.

¶ 12 We affirm the order granting a new trial as well as various pre-trial rulings addressing issues that are likely to recur on remand. Because we remand for a new trial as to past medical expenses, we decline to decide any post-trial issues raised by the parties, including any claim raised in the costs appeal.

## II. Evidence of Medical Expenses Paid versus Billed

¶ 13 Scholle contends that the trial court erred by admitting evidence of the amount of medical expenses paid by his workers' compensation insurer (United), rather than the amounts billed by his medical providers. He says that the payments were collateral source benefits and, therefore, the pre-verdict evidentiary component of the collateral source rule prohibited their admission into evidence.

¶ 14 Delta responds that the trial court properly concluded that the collateral source rule did not apply because Delta's settlement with United meant that the insurance payments no longer constituted payments from a collateral source. Rather, Delta effectively became a source of those payments. In other words, Delta says that, by extinguishing United's interest in recouping the insurance payments, Delta paid compensation for, or contributed to, the

source of those payments. Further, Delta argues that the court properly excluded evidence of the amounts billed by Scholle's medical providers because he was not liable for those amounts.

¶ 15    We agree with Scholle that the trial court misconstrued Colorado law.

## A.    Standard of Review

¶ 16    "We review a trial court's evidentiary rulings for an abuse of discretion." *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 2012 CO 30M, ¶ 12. A court abuses its discretion if its decision is based on an incorrect legal standard. *Id.* We review de novo whether the court applied the correct legal standard. *Id.*

## B.    Relevant Law

### 1.    The Collateral Source Rule

¶ 17    Colorado's collateral source rule consists of two components: (1) a post-verdict setoff rule, codified at section 13-21-111.6, C.R.S 2018; and (2) a pre-verdict evidentiary component, established by common law and codified at section 10-1-135(10), C.R.S. 2018. *Sunahara*, ¶ 13. The first component requires a trial court to set off tort verdicts by the amount of certain collateral source payments received by the plaintiff unless the payments were made because of

a contract entered into and paid for on the plaintiff's behalf. § 13-21-111.6.

¶ 18    The second component bars evidence of a plaintiff's receipt or entitlement to benefits received from a collateral source, most often an insurance company, "because such evidence could lead the fact-finder to improperly reduce the plaintiff's damages award on the grounds that the plaintiff already recovered his loss from the collateral source." *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶¶ 12, 20. "A plaintiff's insurer is a collateral source because it is a third party wholly independent of the tortfeasor to which the tortfeasor has not contributed." *Id.* at ¶ 25.

¶ 19    The rule's purpose is to prevent a tortfeasor from benefitting, in the form of reduced liability, from compensation in the form of money or services that the victim may receive from a third-party source. *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2010). Our supreme court has explained that, if either party is to receive a windfall, "the rule awards it to the injured plaintiff who was wise enough or fortunate enough to secure compensation from an independent source, and not to the tortfeasor, who has done nothing to provide the compensation and

7

seeks only to take advantage of third-party benefits obtained by the plaintiff." *Id.*

¶ 20    In 2010, the General Assembly codified the collateral source rule's pre-verdict evidentiary component in section 10-1-135(10)(a), which provides in pertinent part: "The fact or amount of any collateral source payment or benefits shall not be admitted as evidence in any action against an alleged third-party tortfeasor . . . ." *See Smith v. Jeppsen*, 2012 CO 32, ¶ 17. This statute applies to "cases resulting in recoveries occurring after August 11, 2010," and excludes evidence of the amounts paid by a plaintiff's insurer for medical expenses. *Id.* at ¶¶ 12, 20.

¶ 21    In addition, where a plaintiff's insurer has obliged a medical provider to accept a discounted rate for services (or a "write off" of a portion of the bill), the reduced rate constitutes a benefit received from a collateral source. *Gardenswartz*, 242 P.3d at 1085. Because the plaintiff would have been responsible for the entire billed amount if the plaintiff had not been insured, the discounts "are as much of a benefit for which [the plaintiff] paid consideration as are the actual cash payments by his health insurance carrier to the health care providers." *Id.* (citation omitted).

¶ 22 The collateral source rule thus prevents a tortfeasor from standing in the plaintiff's shoes and enjoying the same discounted medical rates as the plaintiff's insurance company receives. *Id.* ("To hold otherwise 'is to allow the tortfeasor to receive a windfall in the amount of the benefit conferred to the plaintiff from a source collateral to the tortfeasor.'") (citation omitted). As a result, a "plaintiff's damages are not limited to the amount paid by her insurer, but may extend to the entire amount billed, provided those charges are reasonable expenses of necessary medical care." *Arthur v. Catour*, 803 N.E.2d 647, 651 (Ill. App. Ct. 2004), *aff'd*, 833 N.E.2d 847 (Ill. 2005), *quoted with approval in Gardenswartz*, 942 P.3d at 1087; *see Forfar v. Wal-Mart Stores, Inc.*, 2018 COA 125, ¶ 28.

¶ 23 In sum, the plaintiff "should be made whole by the *tortfeasor*, not by a combination of compensation from the tortfeasor and collateral sources. The wrongdoer cannot reap the benefit of a contract for which the wrongdoer paid no compensation." *Gardenswartz*, 942 P.3d at 1083 (citation omitted).

## 2. The Workers' Compensation Statute

¶ 24    Workers' compensation insurance carriers pay benefits based on a statutory fee schedule. § 8-42-101(3)(a)(I), C.R.S. 2018. The statute declares that "[i]t is unlawful, void, and unenforceable as a debt" for any person or medical provider to "contract with, bill, or charge" any amount in excess of the relevant fee schedule unless approved by the director of the division of workers' compensation. *Id.* A covered employee is not liable for benefits paid under the workers' compensation statute, and a medical provider may not seek to recover fees or costs from a covered employee once an employer has admitted liability for the employee's medical costs. § 8-42-101(4).

¶ 25    An injured employee, in addition to accepting workers' compensation, may also pursue a remedy against a third-party tortfeasor "to recover any damages in excess of the compensation available" under the statute. § 8-41-203(1)(a), C.R.S. 2018.

¶ 26    With respect to workers' compensation paid, section 8-41-203(1)(b) provides as follows:

> The payment of compensation pursuant to [the workers' compensation statute] shall operate as and be an assignment of the cause of action

against such other person to . . . the person, association, corporation, or insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury.

¶ 27 This provision creates two claims — "one 'owned' by the employee and one 'owned' by the carrier." *Sneath v. Express Messenger Serv.*, 931 P.2d 565, 568 (Colo. App. 1996). "Each of the parties may prosecute his or its own individual claim" independently of the other. *Id.*; *see also* § 8-41-203(1)(e)(II). The right of subrogation created by section 8-41-203(1)(b) extends to all benefits payable under the workers' compensation statute but does not extend to moneys collected for noneconomic damages. § 8-41-203(1)(c)-(d).

## C. Additional Facts

¶ 28 To reiterate, United, pursuant to section 8-41-203(1), filed an action against Delta and Moody to recover as damages the compensation United had paid to or on behalf of Scholle. The trial court consolidated United's action with Scholle's later-filed action

11

against the same defendants. Delta then settled United's damages claim for $328,799.16, and the court dismissed United's complaint. After Moody was dismissed, Scholle and Delta remained as the only parties.

¶ 29 Before the first trial, Scholle filed three motions in limine implicating the collateral source rule. In essence, he argued that evidence of the workers' compensation payments he received should not be admitted and that he should be able to present evidence of the amounts billed by his medical providers because those amounts were a truer reflection of the reasonable cost of his medical services. Delta responded that the workers' compensation benefits were not payments from a collateral source because Delta had contributed to the payments by settling United's subrogation claim directly with United. Delta further argued that evidence of amounts billed in excess of the amounts paid should be excluded given that such amounts were void under the workers' compensation statute.

¶ 30 The trial court agreed with Delta. The court distinguished this case from a typical collateral source case on the ground that "with respect to the workers' compensation benefits received by Scholle as a result of the incident, United's subrogation claim has been settled

and paid by Delta already." Given Delta's settlement, the court concluded that "Delta is not seeking to reap the benefit of a contract for which it paid nothing, nor is this a situation in which Delta has done nothing to provide the compensation . . . ." The court also ruled that, in light of the workers' compensation statute, allowing Scholle to introduce evidence of amounts billed in excess of amounts paid by United "would constitute a windfall in favor of Scholle to recover for medical expenses for which he never incurred liability." For the same reason, the court ruled that evidence of amounts billed was inadmissible under CRE 401 and CRE 403.

¶ 31 Therefore, the court declined to apply the collateral source rule and ordered that evidence of the amounts paid to Scholle's medical providers would be admissible while evidence of the full amounts billed would not. Before the second trial, the second judge adopted this ruling over Scholle's objection. The court admitted evidence of the medical expenses paid by United but excluded evidence of the amounts billed by the medical providers. The court explicitly relied on the amounts paid to determine Scholle's damages for past medical expenses.

D. Analysis

¶ 32    The trial court should have applied section 10-1-135(10)(a), the pre-verdict, evidentiary component of the collateral source rule. Under that statute, evidence of the amounts paid by Scholle's workers' compensation insurer should have been excluded because the workers' compensation benefits paid to or on behalf of Scholle were collateral source payments. Delta's settlement of United's subrogation claim did not alter that fact. Rather, the settlement simply entitled Delta to a setoff against any damages awarded to Scholle. Moreover, the fact that Scholle could not be liable for any medical expenses billed beyond those paid by United does not distinguish this case from other collateral source cases. To the extent that admitting evidence of the full amounts billed could lead to a "windfall" to Scholle, our supreme court had decided that this is preferable to the alternative: awarding the windfall to the tortfeasor, Delta in this case.

### 1. The Workers' Compensation Benefits Were Collateral Source Payments.

¶ 33    As mandated by statute, the workers' compensation benefits arose out of the contract of hire between Scholle and United. *See*

*Combined Commc'ns Corp. v. Pub. Serv. Co. of Colo.*, 865 P.2d 893, 902 (Colo. App. 1993) (holding that workers' compensation benefits fall within contract exception of section 13-21-111.6, thereby protecting these collateral source payments from offset). Hence, even though Scholle did not pay premiums toward his workers' compensation insurance, he gave consideration in the form of his employment services. *See Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1074 (Colo. 1992) (holding that disability benefits a firefighter received from a pension fund resulted from his employment contract and his providing employment services).

¶ 34    Delta did not contribute anything toward the contract between Scholle and United. Nor did Delta contribute toward the workers' compensation insurance premiums — or, more precisely, to United's ongoing maintenance of its workers' compensation program. (Recall that United is a self-insurer for purposes of workers' compensation.) Consequently, the workers' compensation benefits paid on behalf of Scholle resulted from a contract wholly collateral to Delta. A "wrongdoer cannot reap the benefit of a contract for which the wrongdoer paid no compensation." *Gardenswartz*, 242 P.3d at 1083.

¶ 35 Also, to the extent the workers' compensation statute led Scholle's medical providers to accept amounts less than those ordinarily billed, the reduced rates constituted a benefit received from a source collateral to Delta. *See id.* at 1085; *cf. Crossgrove*, ¶ 22 (noting that, because "the government sets the rates that providers who honor public insurance programs, like Medicare and Medicaid, must accept for certain services," healthcare providers "accept significantly less than the amount billed for certain services in satisfaction of government insured patients' bills"). That benefit resulted from the fact that Scholle was covered by workers' compensation insurance, a circumstance to which Delta did not contribute.

¶ 36 If Scholle had not been insured, he would have been liable for all expenses normally billed. Delta may not step into his shoes to enjoy the benefit of the reduced rates occasioned by the insurance. *See Gardenswartz*, 242 P.3d at 1085. Stated differently, Delta may not benefit from the fact that the person whom it injured happened to be covered by workers' compensation insurance. *See Prager v. Campbell Cty. Mem'l Hosp.*, 731 F.3d 1046, 1059 (10th Cir. 2013) (relying on *Gardenswartz* in a Wyoming case and holding that "to

16

limit [the plaintiff's] damages to the amount paid by Workers' Compensation would confer an unintended and inappropriate benefit on the Hospital Defendants").

¶ 37    Delta, relying on *Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1028 (Colo. 2011), contends that its settlement with United must change this conclusion. In that case, the plaintiff's insurance company (Farmers) settled with a propane company (Ferrellgas) responsible for damaging the plaintiff's home. *Id.* at 1024. Farmers had paid the plaintiff approximately $200,000 to fix the damage, then asserted a subrogation claim against Ferrellgas for that amount. *Id.* Ferrellgas settled Farmers's claim for about $175,000. *Id.*

¶ 38    The plaintiff sued Ferrellgas and argued that the collateral source rule should bar evidence of Farmers's payment to her and preclude a post-verdict setoff from any damages awarded against Ferrellgas. *Id.* at 1025. The trial court ruled that the collateral source rule did not preclude a post-verdict setoff to account for Farmers's payment, given Ferrellas's settlement with Farmers. But the court ordered the parties not to introduce evidence of Farmers's

payment to the plaintiff. *Id.*[2] The trial court later set off the $200,000 from the jury verdict. *Id.*

¶ 39    The supreme court approved, holding that Farmers's subrogation interest in the $200,000 "effectively allowed it to stand in [the plaintiff's] shoes with respect to that amount, and Ferrellgas's [$175,000] settlement of Farmers's subrogation interest was thereby an effective settlement with [the plaintiff] of her interest in the [$200,000] amount." *Id.* at 1027.  So, the supreme court concluded, the settlement "extinguished" the plaintiff's right to seek the $200,000 from Ferrellgas. *Id.*  In other words, Ferrellgas's settlement with Farmers "effectively constituted a partial settlement with [the plaintiff] for that amount." *Id.* at 1028.  Because the "collateral source doctrine is inapplicable to bar the setoff of payments that are in some way 'attributable' to the defendant,"

---

[2] Still, the parties introduced evidence of Farmers's payment to the plaintiff, and the trial court did not intervene. *Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1025 (Colo. 2011).  To address any confusion, the court instructed the jury that "[y]ou should not reduce the amount of damages by amounts either paid to or by Farmers. . . ." *Id.*  The supreme court acknowledged the "troublesome nature of the confusing presentation to the jury" and the potential for such evidence to "taint" the jury's verdict, but the court declined to consider that issue because it was not before the court. *Id.* at 1026.

Ferrellgas was entitled to a $200,000 setoff against the plaintiff's damage award. *Id.* (citation omitted).

¶ 40 Applied to this case, the reasoning of *Ferrellgas* means that Delta's settlement of United's subrogated or assigned interest in the amounts paid on Scholle's behalf effectively constituted a partial settlement with Scholle for those amounts. That is, Delta has already settled with Scholle up to the amount of United's claim, a sort of prepayment of any damages awarded to Scholle. Because Delta's payment settling this claim is attributable to Delta, it was entitled to a post-trial setoff from the damages award.

¶ 41 Delta was not *also* entitled, however, to reduce Scholle's damages award at trial by relying on evidence of United's payments on his behalf. *See Crossgrove,* ¶ 12 ("[S]uch evidence could lead the fact-finder to improperly reduce the plaintiff's damages award on the grounds that the plaintiff already recovered his loss from the collateral source."). As explained, those workers' compensation benefits arose from a contract collateral to Delta to which Delta did not contribute. Delta's settlement of United's damages claim — occurring after the purchase of workers' compensation insurance and after most relevant medical expenses had been paid — did not

transform Delta into a source of the workers' compensation benefits.

¶ 42    To hold otherwise would allow a tortfeasor to benefit twice from the same settlement with the victim's insurer, which is what happened here.  Delta elicited evidence of the medical expenses paid on the ground that the collateral source rule did not bar such evidence given its settlement with United.  By doing so and by convincing the trial court to exclude evidence of the amounts billed, Delta induced the court to award a lower damages amount (i.e., lower than if the court had considered the amounts billed rather than paid).[3]  Then, Delta persuaded the court to reduce the damages award *again* by setting off the amount of Delta's settlement with United.  While the setoff was proper, admitting evidence of the medical expenses paid was not.

¶ 43    To summarize, when calculating Scholle's damages, the fact finder should not have reduced them by considering the amounts

---

[3] Because the record does not contain Scholle's actual medical bills, we do not know the difference between the amounts billed and the amounts paid.  Hence, we do not know precisely how much Delta benefitted from the court's decision.

paid by United, like in *Ferrellgas*, but Delta's settlement with United entitled Delta to a post-trial setoff reflecting that settlement.[4] (We express no opinion on whether the precise amount of the trial court's setoff was correct.)

## 2. The Workers' Compensation Statute Does Not Alter the Analysis.

¶ 44 The workers' compensation statute provides that (1) any amounts billed in excess of the fee schedule are generally "unlawful," "void," and "unenforceable"; and (2) if an employer is liable for a covered employee's medical costs, that employee is not

---

[4] Delta suggested at oral argument that, because United independently pursued its claim against Delta, United effectively took an assignment of Scholle's claim for past medical expenses. Delta thus contends that Scholle no longer had a claim for past medical expenses at all. Under section 8-41-203(1)(b)-(d), C.R.S. 2018, however, United's "assigned and subrogated cause of action" was limited to the sum for which United was liable under the workers' compensation system. So, even if Delta were correct that Scholle assigned his claim to United, such an assignment was partial — it was limited to the amount paid by United. Scholle retained his tort claim for past medical expenses in excess of the amount paid by United. *See also* § 8-41-203(1)(f) ("Nothing in this section shall be construed as limiting in any way the right of the injured employee to take compensation under [this statute] and also proceed against the third party causing the injury to recover any damages in excess of the subrogated rights described in this section."). And, in the trial on such claim, section 10-1-135(10)(a), C.R.S. 2018, barred evidence of amounts paid by United.

liable for such costs. *See* § 8-42-101(3)(a)(I). In light of this statute, the trial court noted that "[a]llowing Scholle to introduce evidence of any amount billed in excess of that actually paid by United would allow Scholle to seek damages for bills that *never, as a matter of law,* amounted to a legal obligation to pay." This, the court concluded, would result in an improper windfall to Scholle. Delta makes the same point on appeal.

¶ 45    There is certainly some force to the trial court's, and Delta's, reasoning. But our supreme court has rejected it in an analogous context that is indistinguishable in any relevant sense.

¶ 46    In *Gardenswartz,* the supreme court considered section 10-16-705(3), C.R.S. 2018, part of the Colorado Health Care Coverage Act applying to "managed care plans." That provision requires every contract between a carrier and a participating provider to include a "hold harmless provision specifying that covered persons shall, in no circumstances, be liable for money owed to participating providers by the plan and that in no event shall a participating provider collect or attempt to collect from a covered person any money owed to the provider by the carrier." § 10-16-705(3).

¶ 47    The supreme court interpreted this provision to mean that the plaintiff in *Gardenswartz*, a purchaser of a managed care plan, could not be liable for the difference between the amounts billed by his healthcare providers and the amounts paid by his insurance. *See* 242 P.3d at 1085.  When the providers contracted with the insurance company and accepted payment on the plaintiff's behalf, they "gave up the right to seek compensation from [plaintiff] for the amount billed."  *Id.*  But, even though the plaintiff "could not be billed" the difference between the amounts billed to the insurer by medical providers and the amounts paid by the insurer, the supreme court concluded that his tort damages should not be limited to the reduced amounts paid by insurance.  *Id.* at 1085-88.  So, the plaintiff retained a tort claim for medical expenses beyond those paid by insurance.

¶ 48    The supreme court acknowledged that, due to the disparity between the cost of medical services billed and the amounts paid by insurance companies, "[i]t can be tempting to treat the discounted amounts as being a truer reflection of a plaintiff's damages."  *Id.* at 1087.  The court resisted that temptation and recognized that a covered plaintiff may seek the full amounts billed.  *See id.* (noting

that plaintiff's damages may extend to the entire amount billed, provided those charges are reasonable expenses of necessary medical care).[5] "This is consistent with the common law position that it is more repugnant to shift the benefits of the plaintiff's insurance contract to the tortfeasor in the form of reduced liability when the tortfeasor paid nothing toward the health insurance benefits." *Id.* at 1088.

¶ 49 As construed in *Gardenswartz*, section 10-16-705(3) has the same effect as section 8-42-101(3)(a)(I) of the workers' compensation statute. In both situations, the injured party is not liable for medical expenses billed beyond those paid by insurance. In both situations, evidence of the full amounts billed is admissible while evidence of the amounts paid by insurance is not. *See* 242 P.3d at 1088 ("Crediting the financial windfall arising from [the insurer's] discounted rates to the injured plaintiff is consistent with the principles of the collateral source rule."). Therefore, the

---

[5] That is, "[b]ecause any write-offs conferred would have been a byproduct of the insurance contract secured by [plaintiff], even those amounts should be counted as damages." *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1088 (Colo. 2010) (quoting *Hardi v. Mezzanotte*, 818 A.2d 974, 985 (D.C. 2003)).

workers' compensation statute does not meaningfully distinguish this case from *Gardenswartz.*

¶ 50 For clarity's sake, we stress that, to the extent a medical services contract or bill is unlawful, void, and unenforceable under section 8-42-101(3)(a)(I), it remains so under our analysis. The provider may not enforce the contract by collecting payment from the injured employee or anyone else. But, simply because the bill is uncollectable does not render it entirely irrelevant to the reasonable value of the medical services provided — just as the uncollectable bills in *Gardenswartz* were not irrelevant. Given the supreme court's holding that the plaintiff's damages for medical expenses were not limited to the amounts paid by insurance, evidence of medical expenses in excess of the amounts paid was relevant, even though those excess amounts could not be collected from the plaintiff. (Indeed, how else could the plaintiff have sought more damages than the amount paid by insurance?)

¶ 51 In addition to being analogous to *Gardenswartz,* this case resembles *Forfar,* ¶ 24, where the tortfeasor argued that the plaintiff's recovery should be limited to the expenses paid by Medicare because, by statute and regulation, he never incurred

liability for any greater amounts. *See also id.* at ¶ 3 (The defendant argued that expenses owed under the plaintiff's private contracts with medical providers "were null and void under Medicare regulations."). The division rejected this claim, holding that, "to the extent that a windfall occurs, we conclude that the plaintiff — not the tortfeasor — should be the beneficiary." *Id.* at ¶ 24.

¶ 52 As a result, "the reasonable value of [the plaintiff's] medical services was not limited to amounts that Medicare paid to his providers, even assuming that they could receive no more from [him] or anyone who might be vicariously liable to them, such as a guarantor." *Id.* at ¶ 30. Likewise, the reasonable value of Scholle's medical services was not limited to the amounts paid by his workers' compensation insurer, even though his providers could not recover more from him. And, because the value of the services was not limited to the amounts paid, evidence of a greater value was relevant, including the amount of the reasonable expenses charged. *See id.* at ¶ 28 ("Unsurprisingly, '[a] majority of courts have concluded that plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts

26

written off from the bills pursuant to contractual rate reductions.'")
(citation omitted); *id.* at ¶ 29 (recognizing that the majority rule
better aligns with our supreme court's view).

¶ 53     For the foregoing reasons, the trial court erred by ruling that
CRE 401 and CRE 403 barred evidence of the amounts billed by
Scholle's medical providers.  While evidence of medical expenses
paid by United is inadmissible, Scholle must be allowed to present
evidence of his necessary and reasonable medical expenses.  The
amounts billed are relevant to that question as well any other
evidence bearing on the reasonable value of the services.  Of course,
Delta may present evidence disputing that those medical expenses
were either necessary or reasonable.[6]

¶ 54     We remand for a new trial on Scholle's past medical expenses
as disclosed by September 10, 2015.  We will address that cutoff
date below as well as other issues that may impact the new trial.

---

[6] To the extent the decision in *Lebsack v. Rios*, No. 16-CV-02356-RBJ, 2017 WL 5444568 (D. Colo. Nov. 14, 2017), conflicts with our analysis, we decline to follow it because it misconstrues Colorado law, particularly *Gardenswartz* and *Ferrellgas*.  *See Kovac v. Farmers Ins. Exch.*, 2017 COA 7M, ¶ 19 ("[W]e are not bound by decisions of federal courts applying Colorado law[.]").

### III. Expert Witness Disclosures

¶ 55     Scholle contends that the trial court erred by "striking" two of his expert witnesses. We disagree.

#### A. Additional Facts

¶ 56     The trial court authored a thorough order addressing this issue, from which we will quote liberally.

¶ 57     Scholle's expert disclosures were due in February 2015. In March 2015, the court granted the defendants' unopposed motion to continue the trial. The court extended the time for Delta to file expert disclosures and for Scholle to file rebuttal expert disclosures. The court also advised, however, that "no further discovery other than what was reflected in the order could be conducted by the parties" and "the continuance was not to be used as a means of increasing the costs in the case by completely reopening discovery."

¶ 58     After the deadline for submitting his rebuttal expert disclosures — and without seeking leave of the court — Scholle disclosed Dr. Eric Ray as an alleged rebuttal expert. Scholle represented that Dr. Ray would testify about Scholle's future medical expenses, including charges by a specific medical facility. Delta objected, arguing that Dr. Ray should have been disclosed as

a retained expert because his testimony would not actually rebut any of Delta's expert witnesses. The court agreed that Scholle should have disclosed Dr. Ray earlier, but the court permitted the late endorsement of Dr. Ray anyway. To reduce the prejudice to Delta from the late disclosure, the court, on September 10, 2015, continued the trial to allow Delta to depose Dr. Ray. "Because all other discovery deadlines had passed, the Court allowed no discovery other than that identified in its order."

¶ 59 During Dr. Ray's deposition, it was apparent that he did not know anything about the "facility charges" associated with Scholle's future medical expenses, despite Scholle's earlier representation to the contrary. In November 2015, Scholle requested extra time to disclose additional experts "to effectively quantify [his] future economic losses." Before the court ruled, Scholle disclosed Laura Woodard as an expert who would testify to the costs of future medications, gym memberships, and home services. On December 7, 2015, the court denied Scholle's request for extra time to disclose experts. The court explained that, when it had continued the trial,

> [t]he Court specifically concluded that no
> discovery other than that identified in the
> September 10 order would be permitted and

did not intend to re-set any other deadlines that may exist under the Rules of Civil Procedure [because] when the case was continued, the Court had concluded that all necessary discovery had been completed with the exception of [Dr. Ray's deposition]. The Court further notes that at the time of the continuance, [Scholle] had already been afforded the full opportunity to submit both affirmative expert disclosures and rebuttal expert disclosures.

¶ 60    Despite this order, Scholle then disclosed yet another expert, Steven Hazel, on December 8, 2015. Hazel would have testified to economic damages, including past and future medical costs, lost future earnings, and future retirement benefits.

¶ 61    Delta moved to strike both Woodard and Hazel. The trial court, applying C.R.C.P. 37(c) and the factors outlined in *Todd v. Bear Valley Village Apartments*, 980 P.2d 973 (Colo. 1999), found that Scholle had failed to establish that his late disclosures of Woodard and Hazel were either substantially justified or harmless. Hence, the court excluded their testimony, while still permitting Dr. Ray's. The second judge enforced this ruling at the second trial.

## B.    Analysis

¶ 62    C.R.C.P. 37(c) excludes evidence not properly disclosed under C.R.C.P. 26(a) and C.R.C.P. 26(e) unless the failure to disclose is

30

either substantially justified or harmless to the opposing party. *Todd*, 980 P.2d at 977. The nondisclosing party bears the burden to show that its failure to disclose was substantially justified or harmless. *Id.* at 978.

¶ 63 The trial court gave several cogent reasons for excluding Woodard's and Hazel's testimony.

¶ 64 First, the court found that Scholle's "repeated contention that the Court continued the trial a second time to allow [him] to quantify his future medical treatment and expenses mischaracterizes what actually occurred." In fact, the court continued the trial to "cure prejudice that [Delta] had suffered from [Scholle's] improper disclosure of Dr. Ray."

¶ 65 Second, the court was unmoved by Scholle's argument that he first learned that Dr. Ray did not know anything about the "facility charges" associated with future medical treatment when Delta deposed Dr. Ray. The court noted that Scholle had represented — in August 2015 — that Dr. Ray would testify to such expenses and "[t]he fact that [Scholle] failed to consult with his own expert before disclosing his opinions is troubling." The court was not persuaded

31

to permit Scholle to use his failure to consult with his own expert as an excuse to present other experts.

¶ 66    Third, the court found "particularly concerning" Scholle's disregard for the December 7, 2015, order explicitly prohibiting Scholle from disclosing additional experts.

¶ 67    Finally, the court considered other *Todd* factors and concluded that Scholle had not met his burden of showing that his failure to disclose Woodard and Hazel was substantially justified or harmless. In particular, the court determined that Scholle had acted "in bad faith" because

> the Court made its position clear. Plaintiff
> proceeded with these disclosures without leave
> of the Court. For Plaintiff to now contend that
> [he] had the right to these disclosures and that
> Defendants are the cause of their own
> prejudice demonstrates that Plaintiff has
> engaged in misconduct worthy of the sanction
> of witness preclusion.

¶ 68    Because the record supports the trial court's decision, we cannot conclude that the court abused its broad discretion by barring Woodard's and Hazel's testimony. *See People ex rel. Strodtman*, 293 P.3d 123, 129 (Colo. App. 2011) (recognizing that we review such decisions for an abuse of discretion); *see also People*

*v. Rhea*, 2014 COA 60, ¶ 58 ("[U]nder the abuse of discretion standard, the test is not 'whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options.'") (citation omitted).

## IV.   Order Granting a New Trial

¶ 69    After the first trial, the trial court granted a new trial under C.R.C.P. 59(d) because Scholle's counsel had misrepresented facts to the court, leading to improperly admitted evidence.  Scholle contends that the court erred, but the record shows that the court acted well within its discretion.

### A.   Additional Facts

¶ 70    The trial court issued a compelling, twenty-four-page order explaining why a new trial was warranted.  We provide only a summary.

¶ 71    During Dr. Ray's deposition in November 2015, he "was not shown any actual billing records."  Instead, he examined Scholle's counsel's "summary disclosure" from August 2015 identifying costs ranging from $329,550 to $659,100 for future treatment with Dr. Ray.  These costs included amounts that Dr. Ray charged ($3092) and amounts that the medical facility charged ($20,923) per visit.

Dr. Ray testified that he knew only the amounts that he charged and knew nothing "about the facility and what they charge." Scholle's counsel said that he did not know why the facility charges had been included in the August 2015 disclosure because Dr. Ray knew nothing about them:

> Q. (BY MR. BENDINELLI)[:] I don't know why we got the facility charge in there . . . you have nothing to do with the facility charge, do you? Okay.

¶ 72    After Dr. Ray's deposition indicated that he could not testify to the facility charges, Scholle disclosed the two additional experts previously discussed (Woodard and Hazel). Responding to Delta's motion to strike those experts, Scholle stated that "[a]t the deposition, both parties became aware that Dr. Ray could *not* testify as to some ancillary charges related to the procedures (e.g.: Facility Fee, attendants, etc.), and that additional expert testimony would be required to substantiate the charges."

¶ 73    In February 2016, Scholle's counsel raised the issue of future damages at a pre-trial conference and said that "if the witnesses . . . retained to discuss the evidence of future medical expenses [Woodard and Hazel] are struck, number one, then [Scholle's]

34

efforts were frustrated to comply with putting together the future medical expenses, because Dr. Ray cannot do that." Scholle's counsel then asserted that, if Scholle were limited to Dr. Ray's testimony, "it is impossible for [Scholle] to present evidence of future medical expenses."

¶ 74    At trial, Dr. Ray's testimony prompted many objections and bench conferences. The court limited Dr. Ray's testimony to only "what had been testified to during his deposition." Nevertheless, Scholle's counsel continued to question Dr. Ray about the facility charges associated with future treatment, and Delta continued to object. The court continued to limit Dr. Ray's trial testimony to his deposition testimony.

¶ 75    Then, during a bench conference, Scholle's counsel told the court that Dr. Ray *had*, in fact, "see[n] the bills" reflecting the facility charges on the day of the deposition. He said that "[t]he deposition indicates that [Dr. Ray] looked at [the bills] the day of the deposition." Delta's counsel protested, but with this "new" information, the court allowed Scholle's counsel to "lay a foundation as to what [Dr. Ray] did." Scholle's counsel then asked Dr. Ray, "So you saw the bills from the surgery center at your deposition?" Dr.

Ray said, "Yes." He then testified that the facility charges were around $23,000 per visit.

¶ 76    In the end, the jury returned a verdict of $1,038,738 in economic damages. After reviewing Dr. Ray's deposition in response to Delta's motion for a new trial, the court found that

> Scholle's counsel misrepresented to the Court that Dr. Ray had reviewed [the] facility charges prior to or during his deposition and was, therefore, competent to testify to these charges over Delta's objection. . . . It appears to the Court that, at a minimum, this resulted in the jury considering over $320,000 in future medical expenses that should not have been admitted . . . . Dr. Ray's own deposition testimony makes clear that he had not reviewed the facility charges prior to his deposition and was not competent to testify about such costs.

## B.    Analysis

¶ 77    As relevant here, a court may grant a new trial based on "[a]ny irregularity in the proceedings by which any party was prevented from having a fair trial . . . ." C.R.C.P. 59(d)(1). A new trial may be granted based "upon counsel's misstatements of fact, or on his statements of fact which have not been introduced in or established by evidence . . . ." *Park Stations, Inc. v. Hamilton,* 38 Colo. App. 216, 218, 554 P.2d 311, 313 (1976).

36

¶ 78    The trial court detailed the various instances of Scholle's attorney's misconduct.  Particularly, the court found

> that based on Dr. Ray's deposition testimony it could not be more clear that he never reviewed the substantial facility charge bills prior to or during his deposition and had no basis for testifying about these charges at trial given that the Court had limited his testimony to items that he reviewed and were discussed in his deposition.  The only reason that the Court allowed Scholle's counsel to ask Dr. Ray about facility charges and testify to these numbers was that during the bench conference to address the issue Scholle's counsel represented to the Court that Dr. Ray had reviewed these numbers and had discussed them at his deposition which was inaccurate and a misrepresentation of what had occurred at the deposition.

The court stressed that Scholle's attorney had admitted several times before trial that Dr. Ray could not properly testify to the facility charges to which he later testified.

¶ 79    In addition, the court concluded that a *separate* misrepresentation from Scholle's counsel warranted a new trial.  Counsel had "engaged in misconduct . . . by failing to provide Delta with a copy of [certain] Safeway pharmacy records prior to trial" and then representing to the court at trial that he had so disclosed the records.  Based on this misrepresentation, the court "erroneously

37

admitted evidence of $18,542.07 in prescription costs." Scholle does not challenge this independent basis of the order granting a new trial, which is sufficient itself to affirm that order. *See IBC Denver II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 717-18 (Colo. App. 2008) (holding that a party's failure on appeal to challenge all alternative grounds for judgment requires affirmance of the judgment).

¶ 80 In any event, the record abundantly supports the court's order. The record reveals that Scholle's attorney misrepresented what occurred at Dr. Ray's deposition and that the attorney had disclosed the pharmacy records. As a result, the court mistakenly admitted evidence that led to an improperly inflated verdict.

¶ 81 On appeal, Scholle says only that, because he disclosed before trial that he would incur future medical expenses in the amount to which Dr. Ray later testified, Delta was not "unfairly surprised" by the information. But that was not the basis of the trial court's order. Rather, the court granted a new trial because Scholle's counsel's misconduct induced the court to improperly admit Dr. Ray's testimony about future medical costs as well as evidence about prescription drug costs. We will not disturb the court's

well-reasoned order. *See Rains v. Barber*, 2018 CO 61, ¶ 8 (noting that we review a trial court's order granting a new trial for an abuse of discretion, which occurs only when the order is manifestly arbitrary, unreasonable, or unfair, or a misapplication of the law).

## V.     Scope of New Trial

¶ 82      Scholle contends that the trial court erred in limiting evidence of damages in the second trial to those properly disclosed as of September 10, 2015 — the date that the court continued the trial the second time. We disagree.

¶ 83      The trial court relied on three principles in limiting the scope of damages on retrial. First, the parties are to be placed in the same positions they occupied before the original trial. *People in Interest of M.B.*, 188 Colo. 370, 378, 535 P.2d 192, 197 (1975). Second, "[r]eversal and remand for a new trial does not automatically reopen discovery." *Erskine v. Beim*, 197 P.3d 225, 232 (Colo. App. 2008). Third, a trial court should be permitted "wide latitude" in managing a retrial because the trial court is "much more familiar with the conduct of the original trial, the needs for judicial management[,] and the requirements of basic fairness to the parties in a new trial." *Cleveland v. Piper Aircraft Corp.*, 985

F.2d 1438, 1450 (10th Cir. 1993), *abrogation on other grounds recognized by US Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010).

¶ 84 The trial court explained that it had "felt compelled to grant Defendant a new trial because of the misrepresentation by Plaintiff's counsel at trial that Dr. Ray had disclosed the future medical expenses that Plaintiff claimed . . . ." Further, "had the Court known that Dr. Ray lacked personal knowledge of the information included in his late disclosure, the Court would not have granted the continuance in the first place." So, the court concluded:

> Under the circumstances of this case, the Court finds that manifest injustice to Defendant would result from allowing Plaintiff to present additional and new damages and to correct the deficiencies in his trial presentation. Were the Court to allow Plaintiff this opportunity, which would essentially result in a "do-over" of his case with a free pass to fix the problems, Defendant, having done nothing wrong here, would be penalized. Defendant would be put in a worse position on retrial and made to defend against new damages without having had any hand in the need for the retrial. Moreover, with additional discovery comes additional cost that Defendant should not have to bear. Basic fairness requires that with respect to damages, the Court should restore the parties to the position that they were in on September 10, 2015.

¶ 85    The court's reasoning is sound and enjoys record support. Contrary to Scholle's appellate argument, the court did not limit the scope of the trial as a discovery sanction against Scholle. Rather, the court did so to avoid injustice to Delta. We will not substitute our judgment for the trial court's discretionary decision to limit evidence of damages to those properly disclosed before September 10, 2015. The same ruling may apply on remand.

## VI.    Jury Trial or Bench Trial

¶ 86    Scholle contends that the trial court erred in striking the jury for the second trial. Reviewing de novo, we do not perceive error. *See Stuart v. N. Shore Water & Sanitation Dist.*, 211 P.3d 59, 61 (Colo. App. 2009).

¶ 87    In its case against Delta and Moody, United demanded a jury trial on June 5, 2014, and paid the fee. Neither defendant did so. In Scholle's separate case against these defendants (filed on June 9, 2014), no party demanded a jury trial or paid the fee. The cases were consolidated on September 22, 2014. As discussed, the trial court later dismissed with prejudice United's complaint, effectively eliminating the first-filed case.

¶ 88    Yet, the remaining action proceeded to a jury trial, presumably because no one noticed that only United — whose case had been dismissed entirely — had ever demanded a jury trial.

¶ 89    Before the retrial, Delta alerted the trial court to the foregoing facts.  The court, relying on C.R.C.P. 38 and C.R.C.P. 39, issued an order striking the jury for the retrial and ordered a bench trial.

¶ 90    Rule 38(a) states that "[u]pon the filing of a demand and the simultaneous payment of the requisite jury fee by any party in actions wherein a trial by jury is provided . . . including actions . . . for injuries to person . . . all issues of fact shall be tried by a jury." Rule 38(b) provides that any party may demand a trial by jury of any issue triable by a jury "by filing and serving upon all other parties . . . a demand therefor at any time after the commencement of the action but not later than 14 days after the service of the last pleading directed to such issue . . . ."  Rule 38(e) says that "[t]he failure of a party to file and serve a demand for trial by jury and simultaneously pay the requisite jury fee . . . constitutes a waiver of that party's right to trial by jury."

¶ 91    Here, it is undisputed that United was the only party to ever demand a jury trial.  Under Rule 38(e), then, both Scholle and Delta

42

waived the right to a jury trial, and they did so before Scholle's case was consolidated with United's. *See Crawford v. Melby*, 89 P.3d 451, 454-55 (Colo. App. 2003) (failure to timely pay requisite fee results in waiver under C.R.C.P. 38(e)). Accordingly, the first trial, as well as the second, should have been to the court. *See* C.R.C.P. 39(b) ("Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court."); *see also Machol v. Sancetta*, 924 P.2d 1197, 1199 (Colo. App. 1996) ("C.R.C.P. 39(b) affords the court no discretion to grant an untimely request for a jury trial.").

¶ 92    Scholle argues that, because United never "withdrew" its jury demand pursuant to Rule 38(e), it remained in effect. But United and its cause of action were dismissed before trial; only Scholle's complaint remained, as to which no party requested a jury trial. *Cf. Nat'l Farmers Union Prop. & Cas. Co. v. Frackleton*, 662 P.2d 1056, 1061 (Colo. 1983) (holding that consolidation order did not "merge the consolidated suits into a single cause of action" or join the parties in each other's actions).[7] Because all parties to the

---

[7] Moreover, because United, the only party who had demanded a jury trial, naturally did not appear at either the first or second trial, a jury trial was inappropriate. *See* C.R.C.P. 39(a).

remaining case had waived a jury trial, the court correctly ordered that the second trial should be to the court. *See* C.R.C.P. 38(e); *see also* § 13-71-144, C.R.S. 2018 (stating that the failure to timely pay the jury fee shall constitute a waiver of a jury trial).

## VII. Conclusion

¶ 93 The portions of the judgment awarding economic damages in the form of Scholle's lost wages and awarding noneconomic damages are affirmed. The portion of the judgment awarding economic damages in the form of Scholle's medical expenses is reversed, and we remand for a new trial limited to determining those damages. We affirm the orders (1) striking witnesses Woodard and Hazel; (2) granting a new trial; (3) limiting the scope of damages; and (4) striking a jury. Because we remand for a new trial, we do not reach the post-trial issues presented in either the merits appeal or the costs appeal.

JUDGE WELLING concurs.

JUDGE RICHMAN concurs in part and dissents in part.

JUDGE RICHMAN, concurring in part and dissenting in part.

¶ 94     I concur with the majority's opinion in all aspects except the grant of a new trial on Scholle's economic damages claims in the form of past medical expenses.

¶ 95     According to the operation of the workers' compensation statute, the payment by United of Scholle's medical expenses effected an assignment of his claim to United for medical expenses against the tortfeasor, in this case, Delta. § 8-41-203(1)(b), C.R.S. 2018. That assignment, or right of subrogation, applied to "all compensation and all medical, hospital, . . . and other benefits and expenses to which the employee . . . [is] entitled. § 8-41-203(1)(c). The assignment to United permitted it to sue Delta for repayment of the past medical expenses, a goal which it successfully achieved by way of its settlement with Delta.

¶ 96     The settlement by Delta of United's assigned, or subrogated, interest in the past medical payments that United had paid Scholle extinguished Scholle's claim for past medical expenses against the tortfeasor, here Delta. *See Ferrelgas, Inc. v. Yeiser*, 247 P.3d 1022, 1028 (Colo. 2011); *see also Lebsack v. Rios*, No. 16-CV-02346-RBJ, 2017 WL 5444568, at *3 (D. Colo. Nov. 14, 2017). Although

45

unpublished, Judge Brooke Jackson's decision in *Lebsack* applied Colorado law on facts indistinguishable from those in this case.

¶ 97    In addition, by operation of law, Scholle had no further obligation to medical providers for any amounts other than those paid under workers' compensation. § 8-42-101(3)(a)(I), C.R.S. 2018. In fact, under that statute it is "unlawful" for any provider to bill for services in excess of the amounts paid under workers' compensation, and any such bills issued would be "void, and unenforceable" under the statute.

¶ 98    Therefore, in my view, allowing Scholle to pursue additional amounts for past medical "expenses" against Delta, in excess of what workers' compensation (or United) has already paid for his injuries and under circumstances where Delta has settled with United, contravenes the intent and purpose of the workers' compensation statutes. The workers' compensation system is designed, in part, to ensure that employees are paid promptly for medical expenses incurred for injuries suffered on the job. *See, e.g., Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 432 (Colo. App. 2010) (Workers' compensation is "a statutory scheme designed to promote, encourage, and ensure prompt

46

payment of compensation . . . .").  The system is not designed to create a financial windfall for the injured employee.  Thus, I disagree with the majority's suggestion that a windfall in this case should go to Scholle.

¶ 99    Conversely, I do not see how Delta would receive a windfall if Scholle is not permitted to pursue a claim for billed amounts.  The record shows that Delta paid over $300,000 to settle United's claim against it, far more than Scholle's actual medical bills and lost wages, which totaled $194,426.  I recognize that Delta freely chose to settle with United for the higher amount, but, under these circumstances, Delta is hardly acquiring a windfall.

¶ 100   In addition, allowing Scholle to sue for amounts of medical "expenses" that are void and unenforceable puts the court in the position of facilitating the enforcement of an unlawful, void, and unenforceable contract.  We should not promote such action in the case of an injured employee any more than we would in refusing to support a lawsuit to enforce a gambling debt, *see Condado Aruba Caribbean Hotel, N.V. v. Tickel*, 39 Colo. App. 51, 53, 561 P.2d 23, 24 (1977), or an illegal sales contract, *see Potter v. Swinehart*, 117 Colo. 23, 28, 184 P.2d 149, 151-52 (1947).

¶ 101    This case is distinguishable from the situation in *Forfar v. Wal-Mart Stores, Inc.*, 2018 COA 125.  First, in *Forfar*, there was not a workers' compensation payment to the injured party, and the tortfeasor in that case had not contributed anything to a settlement with the injured plaintiff.  Thus, subrogation and assignment played no role.  Second, although Forfar may not have been liable to Medicare for the difference between paid and billed amounts, the billed amounts were not deemed by statute to be "unlawful, void, and unenforceable."  Third, *Forfar* notes that although the jury awarded the plaintiff the reasonable value of the providers' services, it did so "without having seen any of the providers' bills."  *Id.* at ¶ 56.  Although it is not clear how the jury arrived at the amount of damages, *Forfar* does not support the majority's conclusion that the bills from Scholle's providers should be admitted into evidence.

¶ 102    In *Volunteers of America Colorado Branch v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2010), as in *Forfar*, the workers' compensation system was not involved, there was no assignment of the injured party's claim to his insurer, and the tortfeasor had not contributed to the settlement of the injured party's claims.  Thus, there was no argument that the injured party's claims against the

tortfeasor were extinguished. The statute that protected the tortfeasor from liability to the providers for amounts billed did not render those bills unlawful or void. And while *Gardenswartz* applies a collateral source rule as to a setoff, there is no holding in the opinion on the admissibility of the injured party's medical bills.

¶ 103 Extinguishing Scholle's claim for additional past medical expenses would avoid other thorny issues addressed by the majority. It would avoid having to decide whether the collateral source rule has any application to an injured employee's efforts to collect more from a third-party tortfeasor than he was paid under workers' compensation. It would avoid having to decide whether evidence of actual payments, or billed amounts, reflects the injured party's past medical expenses. It would avoid having to decide how and when a setoff for the payments by the third-party tortfeasor would be applied. And most significantly, in this case, it would obviate a third trial over Scholle's past medical "expenses" (which

have already been paid) since all his other damages claims against Delta for noneconomic damages are resolved.[1]

¶ 104    Accordingly, I dissent from that portion of the majority opinion that remands for a new trial on Scholle's economic damages claims for past medical expenses.  I otherwise concur in the remainder of the majority opinion.

---

[1] Nothing in the reasoning of this separate opinion should be applied to the injured workers' claims against third-party tortfeasors for noneconomic damages, unpaid future medical needs, or punitive damages.